# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2645

_____

United States of America,       *
      *
      Appellee,       *
      *     Appeal from the United States
      v.       *     District Court for the
      *     Western District of Missouri.
James E. Gilliam,       *
      *
      Appellant.       *

_____

Submitted: March 11, 2008
Filed: April 2, 2008

_____

Before WOLLMAN, BOWMAN, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

James E. Gilliam, Jr., entered a conditional guilty plea to one count of being a drug user in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The plea agreement preserved Gilliam's right to appeal the district court's[1] denial of his motion to suppress. Gilliam appeals, arguing that the <u>Terry</u> stop and frisk that revealed his possession of a firearm violated his Fourth Amendment rights. We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge.

I. Background

On October 25, 2005, seven officers conducted a warrant sweep throughout Kansas City, Missouri, by visiting the addresses listed on outstanding felony warrants. The officers went to the address listed on the arrest warrant for Kenio Simpson, who was sought for failing to appear in court on a drug trafficking charge. After the officers knocked on the door, Gilliam opened the door and the officers asked Gilliam if he was Simpson. After Gilliam responded that he was not Simpson, the officers asked if he knew Simpson or if Simpson was at the residence. At that point, Simpson appeared behind Gilliam and was identified by Gilliam as being Simpson. The officers asked Simpson to confirm his identity, but Simpson denied it. After Gilliam and Simpson began arguing over Simpson's identity, Gilliam grabbed Simpson and tried to push him outside toward the officers. The officers separated Gilliam and Simpson and attempted to determine who was who. Two of the officers took Simpson into custody, handcuffed him, conducted a pat-down search, and questioned him regarding his identity.

Before the officers could positively identify Simpson, Gilliam reentered the residence and headed toward an unsecured area therein. One of the officers told Gilliam to come back. Gilliam responded that the officers did not want him but rather the person on the porch. Gilliam continued to disobey the officer's orders to step outside, causing the officer to walk toward Gilliam. Thereafter, Gilliam walked toward the officer, who put his hand on Gilliam's shoulder and told Gilliam he was going to do a pat-down search to ensure that Gilliam was not carrying any weapons. Gilliam said "okay" and put his hands on the wall. The officer conducted a pat-down search and discovered a firearm in Gilliam's waistband. Gilliam was handcuffed and then arrested for possession of stolen property following a computer check of the weapon. After being indicted, Gilliam filed a motion to suppress the firearm, arguing that there was no basis for a Terry stop or a Terry frisk. Following an evidentiary hearing, the district court denied the motion.

II. Analysis

On appeal, Gilliam argues that his Fourth Amendment rights were violated in two ways. First, he asserts that the Terry stop was improper because the officers had no reasonable indication that he was involved in criminal activity. Secondly, he contends that the Terry frisk was improper because there were no objective facts that created a reasonable suspicion that he was armed and dangerous.

"When reviewing a district court's denial of a motion to suppress, we examine the findings of fact for clear error and review *de novo* whether the investigatory stop and search violated the Fourth Amendment." United States v. Walker, 494 F.3d 688, 691 (8th Cir. 2007). We look at the totality of the circumstances to determine whether an investigatory stop and search was justified. United States v. Hughes, No. 07-2213, 2008 WL 482414, at *2 (8th Cir. Feb. 25, 2008).

In Terry v. Ohio, the Supreme Court held that an officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable, articulable suspicion that the individual is involved in criminal activity. 392 U.S. 1, 30 (1968). Reasonable suspicion does not exist solely on the basis of an officer's hunch. Walker, 494 F.3d at 691. To satisfy the Fourth Amendment, the officer must be able to articulate some minimal, objective justification for a Terry stop. Walker, 494 F.3d at 691.

The district court found that the Terry stop of Gilliam was appropriate because: (1) the officers were attempting to execute an arrest warrant for someone suspected of trafficking a controlled substance; (2) the officers had not yet confirmed the identity of the individual named in the arrest warrant; (3) Gilliam was trying to distance himself from the officers; and (4) Gilliam ignored an officer's directive to stay outside. Gilliam argues that these circumstances are insufficient to justify a Terry stop because his attempt to go back into the house and close the door did not create a reasonable suspicion that he was involved in criminal activity. Gilliam points out

that a person has the "right to ignore the police and go about his business," and that a person's "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed" for a Terry stop. Illinois v. Wardlow, 528 U.S. 119, 125 (2000). Wardlow, however, makes a distinction between a person ignoring the police and a person fleeing from the police. Id. at 125 (a suspect's unprovoked flight from officers can raise a suspicion of criminal activity). Because Gilliam answered the door at the residence listed on the warrant, engaged in an argument with Simpson over Simpson's identity, attempted to avoid further contact with the officers, and ignored commands to remain outside even though the officers had not yet confirmed Simpson's identity, Gilliam's conduct went beyond merely ignoring the police. Instead, the totality of the circumstances created a reasonable justification to briefly detain Gilliam until it was clear that he was not the person named in the arrest warrant.

Gilliam also argues that the officers should have known that he was not Simpson because Gilliam is seventy-four inches tall and the arrest warrant described Simpson as sixty-five inches tall. Gilliam suggests that because a person's height does not change dramatically over time, the discrepancy between his height and Simpson's height should have put the officers on notice that Gilliam was not the person they were seeking. Although Gilliam and Simpson are of different heights, the district court relied on the testimony of one of the officers that the information in an arrest warrant is not always precise. Given the totality of the circumstances and the fluid situation that the officers faced, the difference in height did not necessarily eliminate all reasonable suspicion that Gilliam was the individual named in the arrest warrant. See Walker, 494 F.3d at 693 (during a Terry stop, officers can take reasonable steps to protect their safety and maintain the status quo during the stop); United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001) (during a typical Terry stop, an officer may ask the detainee "a moderate number of questions" to determine the detainee's identity and to confirm or deny the officer's suspicions).

Gilliam's further argument that his proximity to Simpson does not make the Terry stop reasonable is likewise without merit. Although an individual's mere presence in a high crime area does not create reasonable suspicion that the individual is involved in criminal activity, Hughes, 2008 WL 482414, at *2 (citing Brown v. Texas, 443 U.S. 47, 52 (1979)), the basis for the officers' suspicion of Gilliam was not solely that Gilliam was found at the residence listed on the arrest warrant. Rather, Gilliam's conduct, as discussed above, along with the fact that the officers had not yet confirmed Simpson's identity, created a reasonable basis to briefly detain Gilliam until the officers could ascertain who was who. See Hughes, 2008 WL 482414, at *2 (citing United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005), for the proposition that suspicious behavior and presence in high crime area creates reasonable suspicion to make a Terry stop). Accordingly, we conclude that the district court did not err in finding that the officers conducted a proper Terry stop of Gilliam.

Following a valid Terry stop, the officer may conduct a limited pat-down search of the individual's outer clothing for the purpose of uncovering concealed weapons if the officer has a reasonable, articulable suspicion that the person is armed and dangerous. Terry, 392 U.S. at 30. This search must be conducted in the least intrusive means reasonably necessary to dispel the risk of danger to the officers. Id.

The district court found that the officers properly conducted a Terry frisk of Gilliam because the circumstances of the encounter with Gilliam created a reasonable concern for officer safety. The district court noted that: (1) the officers were executing an arrest warrant for a person facing felony drug charges; (2) Gilliam was avoiding contact with the officers; (3) Gilliam was not heeding the officer's commands to remain outside; and (4) Gilliam was wearing multiple layers of clothing and baggy pants that could conceal dangerous items. Although Gilliam argues that these circumstances do not establish a reasonable, articulable suspicion that he was armed and dangerous and that his attempt to go back into the house was a valid

exercise of his right to go about his business and ignore the police, we conclude that, for the reasons stated above, this argument is without merit.

Gilliam further asserts that his baggy clothing could not create reasonable suspicion that he was armed and dangerous because that fact also applies to a large proportion of the black male population. We grant that Gilliam's attire alone would not necessarily have created a reasonable suspicion that he was armed and dangerous. See United States v. Green, 52 F.3d 194, 198 (8th Cir. 1995) (investigatory stop not justified by fact that individual was traveling alone, carrying a small bag, wearing baggy clothing, and failed to make eye contact with officers). Nevertheless, when viewed in the light of the totality of the circumstances, the fact that Gilliam easily could have been concealing a weapon, combined with the fact that the officers reasonably suspected that he was the subject of an arrest warrant for trafficking a controlled substance, see United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) (suspected involvement in drug transactions creates a reasonable suspicion that individual is armed and dangerous), and the fact that he was avoiding contact with the police and ignoring commands to stop, gave rise to a reasonable concern for officer safety. See also United States v. Crawford, 891 F.2d 680, 681 (8th Cir. 1989) ("Obviously, conduct typical of a broad category of innocent people provides a weak basis for suspicion. However, the relevant inquiry is not whether particular conduct is innocent or guilty but the degree of suspicion that attaches to particular types of noncriminal acts." (internal citation and quotation omitted)). Thus, we conclude that the district court did not err when it found that the officers conducted a proper Terry frisk of Gilliam.

The judgment is affirmed.

_____

-6-