# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2222
_____

United States of America

*Plaintiff - Appellee*

v.

Carlton Hightower

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: January 18, 2013
Filed: June 17, 2013

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After an investigatory stop by police, Carlton Hightower was arrested for public intoxication. An inventory search of his vehicle yielded marijuana and a firearm, and Hightower was subsequently charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hightower moved to suppress the

firearm and other evidence, but the district court[1] denied his motion. Hightower appeals the denial of his motion to suppress, and we affirm.

I.

On August 26, 2011, the Paris, Arkansas Police Department received an anonymous call suggesting police were needed at the Paris Boys' and Girls' Club ("Boys' Club"). They treated the call like an emergency because the caller hung up without providing additional information. Three officers from the Paris Police Department initially responded to the call, and a fourth officer joined shortly after their arrival. Finding no problem at the Boys' Club, one of the officers noticed a group of 10 to 15 people across the street at an apartment complex. To at least one officer, the group appeared hostile and on the verge of conflict. The officers determined the emergency call was probably about this group and moved across the street to investigate.

As the officers began to cross the street, the group began to disperse. Officers observed Hightower and his girlfriend leave the area and enter his nearby car. Hightower began to back the car out of the parking lot at a slow rate of speed, and officers shouted for Hightower to stop. One officer drew his Taser and stood in front of the car, but Hightower began to pull forward a few feet. Finally, after another officer walked alongside the slow-moving car and drew his firearm, Hightower stopped the car. The officer walking alongside the car testified the car windows were down and he could smell the odor of alcoholic beverages coming from the vehicle.

Once the vehicle stopped, officers ordered Hightower to exit the vehicle. Hightower complied with the instruction, rolling up the car windows and locking the

---

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

doors as he exited. Officers testified Hightower was cooperative, but also "agitated," after being stopped. Officers noticed open beer containers in the car and asked Hightower whether he had been drinking. Hightower admitted he had been drinking, and the officers subsequently arrested him for public intoxication. After his arrest, Hightower refused to consent to a search of his car. After determining the vehicle lacked insurance, the officers arranged to have it towed. An inventory search of the vehicle prior to towing yielded marijuana and a firearm.

Hightower was charged with being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Following an unsuccessful attempt to suppress the evidence seized in the inventory search, Hightower entered a conditional guilty plea. He was sentenced to 46 months imprisonment and 3 years supervised release.

## II.

The sole issue on appeal is whether there was reasonable suspicion to support the officer's investigatory stop of Hightower.[2] The district court concluded the officers conducted a valid Terry stop,[3] see Terry v. Ohio, 392 U.S. 1 (1968), and denied Hightower's request to suppress the evidence recovered in the inventory

---

[2]Hightower does not challenge the validity of his subsequent arrest or the inventory search of his vehicle.

[3]We note that even though Hightower was stopped while operating his vehicle, he does not argue on appeal that we should view the event as a traffic stop. In any event, the same "reasonable suspicion" standard applies to both a traffic stop and a Terry stop. See United States v. Rodriguez-Arreola, 270 F.3d 611, 617 (8th Cir. 2001) ("The Supreme Court has analogized roadside questioning during a traffic stop to a Terry stop . . . ." (citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984))); see also United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012) ("The reasonableness of a traffic stop is measured by the same standards set forth for investigatory stops in Terry v. Ohio . . . .").

search. "When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings, and we review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Craig, 630 F.3d 717, 721 (8th Cir. 2011) (internal quotation marks omitted).

"Law enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005) (citing Terry, 392 U.S. at 25-31). "A reasonable suspicion is a 'particularized and objective' basis for suspecting [criminal activity by] the person who is stopped." Id. "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." Id. (internal quotation marks omitted). Here, the district court identified several factors supporting reasonable suspicion: the initial emergency call, the area of the incident, the behavior of the individuals at the scene, and Hightower's own behavior. The district court concluded, based on the totality of the circumstances, that these factors supported a finding of reasonable suspicion.

We agree. Several police officers responded to a vague, anonymous emergency call suggesting officers were needed at the Boys' Club. At least one officer testified the area near the Boys' Club, including the apartment complex where Hightower's stop occurred, had been the scene of fights, drug arrests, and other criminal activity.[4] Finding no emergency at the Boys' Club, one officer noticed a group of individuals

---

[4]Hightower suggests the district court erred by not specifically concluding the location of the stop was a "high crime area," and instead relying on the officers' testimony about prior criminal activity. However, Hightower presents no cases, and we can find none, requiring a district court to make a specific "high crime area" finding to support reasonable suspicion. We decline to adopt such a requirement.

-4-

across the street posturing as if they were about to fight, or already had fought.[5] The officer testified he heard "raised voices and unsavory language" from the group. In sum, the officers were presented with an emergency call, in an area of town known for fighting and criminal activity, and a nearby group of individuals who appeared on the verge, or in the immediate aftermath, of unlawful behavior.

A similar set of circumstances existed in United States v. Dupree, 202 F.3d 1046 (8th Cir. 2000). In that case, police received an anonymous tip that a group of men were selling drugs in an alley. Id. at 1047. A responding officer knew frequent drug trafficking took place in the area. Id. at 1049. As officers arrived, the group of men split up and dispersed. Id. at 1048. Officers followed three of the men and eventually approached them to talk, at which point one of the men appeared to discard a small object which the officers believed was evidence of drug trafficking. Id. We concluded reasonable suspicion existed under those circumstances to stop the three men. Id. at 1049. The same general circumstances supporting reasonable suspicion in Dupree—an anonymous emergency call, a high-crime area, and apparent unlawful behavior—also existed here.

Hightower's own behavior during the incident also weighs in favor of finding reasonable suspicion. The parties present contrasting versions of Hightower's

---

[5]Hightower argues the district court clearly erred by finding individuals in the group were posturing because the police report of the incident does not mention posturing. The author of the police report explained, however, that he did not mention posturing in the police report because he did not include that level of detail in the report. See Suppression Hr'g Tr. 25, Jan. 4, 2012. And notwithstanding the omission, two officers testified they saw individuals posturing as if they were about to fight, or had been fighting. See Suppression Hr'g Tr. 26, 51, Jan. 4, 2012. The district court appears to have credited the officers' testimony, as well as the explanation for why posturing did not appear in the police report. Hightower has not demonstrated this factual finding was clearly erroneous.

behavior: the Government suggests Hightower "attempted to flee the parking lot by hurrying to his car," while Hightower states he "simply [began] walking away from police" and "did not run to his car, jump in, and attempt to drive off at a high rate of speed." The district court adopted an intermediate view of the facts, never stating Hightower hurried away from the officers but noting that "from the officers' perspective, [Hightower] ignored repeated orders to stop, and continued to attempt to flee." This factual conclusion by the district court is not clearly erroneous and supports a finding of reasonable suspicion. Although simply ignoring the police cannot be the basis for reasonable suspicion, conduct beyond merely ignoring, such as attempting to flee, can create reasonable suspicion to support a Terry stop. See United States v. Gilliam, 520 F.3d 844, 847 (8th Cir. 2008).

Hightower attacks the weight of each factor individually, then argues no reasonable suspicion can exist since each factor cited by the district court merits little or no weight standing alone. Even if a single factor identified by the district court, when viewed in isolation, did not support a finding of reasonable suspicion, our precedent prohibits such a fragmented approach to reasonable suspicion. When evaluating whether reasonable suspicion for a Terry stop exists, "we view the [officers'] observations as a whole, rather than as discrete and disconnected occurrences." United States v. Poitier, 818 F.2d 679, 683 (8th Cir. 1987); see also United States v. Arvizu, 534 U.S. 266, 274 (2002) (rejecting court of appeal's reasonable suspicion analysis where the "court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances'").

Lastly, Hightower suggests the language of the district court's opinion requires that we consider only the actions that occurred before the individuals (including Hightower) dispersed in evaluating reasonable suspicion. United States v. Hightower, No. 2:11-CR-20053, 2012 WL 79688, at *3 (W.D. Ark. Jan. 11, 2012) ("[O]fficers

made the reasonable decision to cross the street to the apartment complex and investigate what was happening."). This argument is meritless. We agree with the Government that the district court was using "investigate" in the traditional sense of inquiring into the situation. We do not read the district court's opinion to suggest the investigative <u>Terry</u> stop occurred as soon as the officers began approaching the group. Indeed, such an interpretation would be contrary to our precedent. <u>See</u> <u>United States v. Willis</u>, 967 F.2d 1220, 1224 (8th Cir. 1992) (holding defendant "was seized when he complied with [officer's] order to stop and put his hands on the roof wall," and not when officers began pursuit or initially ordered defendant to come out of hiding).

In sum, based on the totality of the circumstances—including the emergency call, the history of criminal activity in the area, the behavior of the group, and Hightower's own behavior—the officers had reasonable suspicion to justify a <u>Terry</u> stop of Hightower. Therefore, it was not error for the district court to deny Hightower's motion to suppress.

III.

Accordingly, we affirm.

_____