*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0766**

State of Minnesota,
Respondent,

vs.

Bradley Mikal Leritz,
Appellant.

**Filed May 11, 2015
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-13-3245

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, LL. Rhyddid Watkins, Special Assistant Public Defender, Faegre Baker Daniels, LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Bradley Mikal Leritz challenges the district court's denial of his suppression motion, arguing that police did not have a reasonable articulable suspicion to conduct a pat search that resulted in the discovery of illegal drugs. We affirm.

**FACTS**

On July 19, 2012, St. Paul Police Department officers Michael Soucheray and Chris Rhoades were on patrol. A colleague contacted Officer Soucheray stating that an individual, Christopher Red Elk, had an outstanding warrant and that he was at a residence in St. Paul that was close to the officers' location at the time. The colleague told Officer Soucheray that Red Elk was tall, had tattoos and had a short haircut. Officer Rhoades testified that the officers had "a very vague description" of Red Elk. Officer Soucheray testified that they "knew that in previous attempts to locate Mr. Red Elk, by the time officers were on scene he tends to disappear and vanish into thin air," and that Red Elk had "an assaultive history, weapon history[, and] [f]leeing history." The officers also knew that the residence at which Red Elk was reportedly located "was a known . . . dope house."

Officer Soucheray testified that he and Officer Rhoades "drove directly to the [residence] without stopping to pull up [Red Elk's] pictures or things like that, because we wanted to get there as fast as possible." The officers testified that retrieving booking photos "takes quite a bit of time" because the internet in the squad car is often slow, and

that because Red Elk had a history of fleeing they wanted to get to the residence as quickly as possible before Red Elk left.[1]

Upon arriving at the residence, the officers parked a few houses away. As they walked up the driveway toward the residence, a male, later identified as appellant Bradley Leritz, was walking toward them, away from the residence and the garage. Officer Rhoades testified that appellant "[f]roze in place" and that he had "a deer in the headlights look," Officer Soucheray said appellant had "a shocked or surprised look." When appellant saw the officers, he turned around and briskly walked back toward the residence. Officer Soucheray then told appellant to stop and put his hands behind his back. He also testified that he "had no idea who [appellant] was" and that "because of his reaction to seeing us we weren't going to allow him to walk back either into the house or into the garage where they could have an opportunity to gain access to weapons or anything."

Officer Soucheray "did a *Terry* frisk [of appellant] for weapons, because of the history of Red Elk [and they] weren't sure if [appellant] was Red Elk." During the pat search, Officer Soucheray noticed a "large bulge in [appellant's] front pocket" and in his pat search, outside appellant's pocket, he felt a round object with sharp edges that Officer Soucheray recognized from his training and experience as narcotics. Officer Soucheray retrieved the substance from appellant's pocket, asked him what it was, and appellant

---

[1] The district court found the officers "did not get a photo of Red Elk because the internet in the squad was too slow and they didn't have time."

3

responded that it was methamphetamine.[2]  Neither officer asked appellant his name until after the pat search was completed and the drugs were seized.  Red Elk is Native American.  Appellant is Caucasian.

Appellant was charged with second-degree possession of methamphetamine in violation of Minn. Stat. § 152.022, subd. 2(a)(1) (2012).  Appellant moved the district court to suppress the seized evidence.  The district court denied appellant's suppression motion.  Appellant waived his right to a jury trial and proceeded with a stipulated-facts trial.  The district court found appellant guilty.  This appeal followed.

## D E C I S I O N

"When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo.'"  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)).  We review reasonable suspicion for a *Terry* stop in a warrantless search de novo.  *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).  We consider the totality of the circumstances in determining whether a *Terry* stop is justified.  *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

---

[2] A Minnesota Bureau of Criminal Apprehension test determined that the substance was 19.8 grams, containing methamphetamine.

## I.

Appellant argues that the police did not have a reasonable, articulable suspicion to stop and pat search him and that the district court therefore erred in denying his suppression motion.

The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "Warrantless searches are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions," one of which is a pat-down search for weapons. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (quotation omitted), *aff'd Minnesota v. Dickerson*, 508 U.S. 36, 113 S. Ct. 2130 (1993). A police officer may stop and frisk an individual when the officer has "a reasonable, articulable suspicion that a suspect might be engaged in criminal activity" and if "the officer reasonably believes the suspect might be armed and dangerous." *Id.*; *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968) (stating a pat search of outer clothing is permitted when both factors are present "to discover weapons which might be used to assault" the officer).

Before conducting a *Terry* search, an officer must have reasonable suspicion "based on specific, articulable facts" and a "particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). Courts "are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *Britton*, 604 N.W.2d at 88-89. While "merely being in a high-crime area will not justify a [*Terry*] stop," evasive conduct, such as "eye contact with police,

5

combined with [a] departure from a building with a history of drug activity" can justify a search based on reasonable suspicion. *Dickerson*, 481 N.W.2d at 843.

Here, the officers had a general description of Red Elk, for whom there was an active arrest warrant, as they approached a known "dope house." In addition to the generally understood relatedness of drug dealing, weapons, and violence, *State v. Craig*, 826 N.W.2d 789, 797 (Minn. 2013); *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005), the officers had specific knowledge that a person they believed to be at the residence had a history of assaultive behavior involving weapons. When they saw appellant walking down the driveway away from the house and garage, he looked shocked and surprised at seeing the officers. He displayed a "deer in the headlights look" and turned around and briskly walked back toward the residence. Appellant appeared to the officers to be tall, with short hair and a tattoo, similar to the general description they had of Red Elk. Officer Soucheray testified that he did not want to allow this person to go into the house or garage where he "could have an opportunity to gain access to weapons" and so he stopped appellant.

*Dickerson* is instructive in our analysis of the propriety of this stop and frisk. 481 N.W.2d at 843. Here, appellant was leaving a known drug house and exhibited evasive conduct, similarly to Dickerson. *Id.* (stating "evasive conduct after eye contact with police, combined with his departure from a building with a history of drug activity, justified police in reasonably suspecting criminal activity.") Here, police had a reasonable suspicion that the person approaching them may be Red Elk, an individual with an "assaultive" history, who might be armed and dangerous. The district court also

6

found that the appellant's "evasive conduct after eye contact with police combined with his actions justify reasonable suspicion that the person is involved in criminal activity." Appellant does not argue the district court's findings are clearly erroneous, and the record supports the district court's determination of reasonable suspicion to stop and frisk appellant.

The totality of the circumstances included the district court's finding of appellant's evasive conduct and the information the officers had about the residence, Red Elk, and their training and experience. These circumstances are sufficient to establish reasonable suspicion that appellant was engaged in criminal activity and might be armed and dangerous, permitting a *Terry* stop and pat search.

Appellant questions the officers' judgment and argues that there is "no reasonable basis" for the officers to believe that appellant was Red Elk, emphasizing that Red Elk is Native American and appellant is not. The district court found that the officers knew that Red Elk was Native American, but also found that at the point in time when the officers asked appellant to stop, there was a "possibility that the man was Red Elk." The record supports this finding. That the stop and frisk is ultimately found to have been of someone other than the person sought to be arrested does not render the police action constitutionally infirm. *See United States v. Gilliam*, 520 F.3d 844, 847-48 (8th Cir. 2008) (stating that there was reasonable, articulable suspicion to support a *Terry* frisk on the defendant when he was at Simpson's residence, the police had an arrest warrant for Simpson, the defendant and Simpson argued over Simpson's identity, and officers were unable to eliminate all reasonable suspicion that the defendant was not Simpson). Police

7

may stop and frisk only individuals of whom they are reasonably and articulably suspicious, but are not expected to resolve all reasonable doubt of identity before acting. *Id.* at 847.

**II.**

Appellant also argues that, even if the officers had reasonable suspicion to conduct a *Terry* stop of appellant, they impermissibly broadened the scope of the search when they retrieved the methamphetamine from appellant's pocket.

A *Terry* stop "permits a protective frisk for weapons." *Dickerson*, 481 N.W.2d at 844. When police are assured an individual has no weapons, "the frisk is over." *Id.* The state has the burden of demonstrating that a search was "sufficiently limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325-26 (1983). "The legality of a pat search depends on an objective examination of the totality of the circumstances." *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014).

"If a police officer lawfully pats down a suspect's outer clothing and [an object's] identity [is] immediately apparent [and] the object is contraband, its warrantless seizure would be justified." *Minnesota v. Dickerson*, 508 U.S. 366, 376-77, 113 S. Ct. 2130, 2137 (1993); *see also State v. Krenik*, 774 N.W.2d 178, 185 (Minn. App. 2009) (stating this court has recognized the plain-feel exception to the warrant requirement), *review denied* (Minn. Jan. 27, 2010). Immediately apparent "does not mean that an officer must be certain about the object's identity; rather an officer must have probable cause to believe that the item is contraband before seizing it." *Krenik*, 774 N.W.2d at 185 (quotation omitted); *see also Texas v. Brown*, 460 U.S. 730, 741, 103 S. Ct. 1535, 1543

8

(1983) (stating the phrase "immediately apparent" in referring to a plain-view doctrine "was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary").

The district court found that "[b]ased upon [Officer Soucheray's] training and experience [he] thought that this might be narcotics." This finding is supported by Officer Soucheray's testimony that he "noticed there was a large bulge in [appellant's] front pocket" and that when he "ran [his] hand down the front of [appellant's] pockets . . . [and] could feel a round object with sharp edges" that he then recognized as likely being a controlled substance.

The seizure here occurred *during* the frisk for weapons, and not after the search for weapons was complete. Our decision in *Krenik* supports the district court's conclusion that the scope of the pat search was permissible. 774 N.W.2d at 185. In *Krenik*, the officer searching Krenik "could feel a smoking glass tube and recognized it as contraband" but also testified during cross examination that "she could not be certain that the object was a glass pipe and it could have been something else." *Id.* We concluded that the officer's testimony provided adequate support for the district court's finding that there was a "basis to suspect that the item was a crack pipe."[3] *Id.*

We conclude that Officer Soucheray's retrieval of methamphetamine from appellant satisfied the "immediately apparent" standard used in *Krenik*. *Id.* Officer

---

[3] Here, the district court did not make specific findings regarding the seizure of contraband from appellant's pocket, but did conclude that the totality of the circumstances justified seizure apprehension of appellant and permitted the pat search.

Soucheray testified that he knew by the bulge and the feel of the object that it was likely contraband. The plain-feel exception does not require an "unduly high degree of certainty," and we conclude that the pat search and seizure of methamphetamine from appellant was within the permissible scope of the pat search. *Id.* (quotation omitted).

### III.

Lastly, appellant argues that Officer Soucheray had no basis to remove the contraband from appellant's pockets. The state argues that appellant did not raise this issue to the district court, and has therefore waived it on appeal. The state argues that it is particularly prejudiced here because the state "was not on notice that it needed to create a detailed record on the removal of the methamphetamine from appellant's pants."

Because appellant did not raise this argument to the district court, we decline to address it. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure.").

**Affirmed.**