United States Court of Appeals

For the Eighth Circuit

_____

No. 19-3555
_____

United States of America,

*Plaintiff - Appellee*,

v.

Steven Traylor,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 19, 2020
Resubmitted: August 27, 2021
Filed: September 17, 2021
_____

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

After this court ordered a limited remand for further consideration of Steven Traylor's motion to suppress evidence seized from his car, *United States v. Traylor*,

840 F. App'x 894, 894-95 (8th Cir. 2021) (per curiam), the district court[1] entered an order denying the motion. Traylor's appeal has been resubmitted for decision, and we now affirm the judgment.

I.

The disputed seizure arose during a stop conducted in Warrensburg, Missouri by Detective Brown of the Johnson County Sheriff's Office on August 9, 2018. Brown was investigating a residence on South Maguire Street where he had seen "a large amount of traffic and foot traffic," and where at least one informant reported that narcotics were sold. In the weeks before the stop, Brown saw a red Dodge Charger with expired temporary tags parked in the driveway of the residence.

While investigating the Dodge Charger, Brown contacted Detective Bilbruck with the Warrensburg police. Bilbruck said that Traylor typically drove the Charger, and that he believed Traylor was using the vehicle to distribute narcotics. Bilbruck also informed Brown that police were investigating another residence on Clark Street in Warrensburg. In subsequent weeks, Brown saw Traylor's Charger outside the suspect residence on two or three occasions, and police conducted a controlled purchase of narcotics at the Clark Street residence.

On August 9, Detective Brown saw a red Charger with license plates exit a gas station. Brown entered the license plate number into a database and found that the license plate was registered to an Acura, not to a Charger. Brown followed the Charger and observed the driver make a turn without signaling. The car eventually pulled in front of a service station, and parked in a way that blocked access to a

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

portion of the business. Traylor exited the car and walked at a quick pace toward the station.

Brown approached Traylor in the parking area and stopped him on the basis of traffic violations. Traylor locked his car once Brown informed him that he was seized. When Brown asked for license, registration, and insurance, Traylor unlocked the car, retrieved documents, and then locked the car again. Traylor then began to search on his phone for proof of insurance. Traylor handed Brown a handwritten bill of sale for the Dodge Charger. Brown saw that the previous owner was a man involved in financing drug transactions. The bill of sale reflected a sale date of August 1, 2018, but Brown had seen Traylor driving the vehicle before that date—that is, when it would still have been owned by the known drug financer.

In response to questioning, Traylor acknowledged that he was on probation for a drug offense. Brown asked for consent to search the vehicle; Traylor declined. Brown then requested through his radio that a police K-9 unit with a drug-sniffing dog respond to the scene. Brown provided the Charger's vehicle identification number to an officer at police dispatch, and the officer responded that the vehicle was reported as towed. Brown then began writing a ticket for failure to register the car.

While Brown was writing, he asked Traylor for consent to search his person; Traylor agreed. Brown found a second cell phone and three hundred dollars in cash during the search. After completing the ticket, Brown called the probation and parole office to inquire about Traylor. A police K-9 unit arrived while Brown was on the call, and a police dog alerted to narcotics. Brown searched the car and found a revolver and marijuana.

A grand jury charged Traylor with unlawful possession of a firearm as a previously convicted felon. *See* 18 U.S.C. § 922(g)(1). Traylor moved to suppress evidence seized from his car on the ground that officers unlawfully prolonged the

stop to permit the dog sniff. The district court denied the motion, reasoning that the stop was not extended. Traylor conditionally pleaded guilty, reserving his right to appeal the order. *See* Fed. R. Crim. P. 11(a)(2). On appeal, the government conceded that the order was based on a mistaken finding of fact about when the dog arrived, so we ordered a limited remand for the district court to consider whether the police reasonably extended the seizure beyond the ordinary duration of a traffic stop. *Traylor*, 840 F. App'x at 895.

On remand, the district court denied the motion on the ground that reasonable suspicion supported an extended seizure. On Traylor's appeal, we review factual findings for clear error, and the ultimate conclusion on reasonable suspicion *de novo*. *See United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020).

II.

Authority for a seizure on the basis of a traffic violation "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The drug-sniffing dog alerted to the presence of drugs at "a point in time after the detective reasonably should have finished the tasks tied to the traffic infraction." *Traylor*, 840 F. App'x at 895. Even so, the extended seizure was lawful if there existed "the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355. In evaluating an assertion of reasonable suspicion, we consider the "totality of the circumstances" to decide "whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Traylor first contends that the district court exceeded the scope of our remand by finding additional facts. The scope of a remand is "determined by reference to the analysis contained in the opinion." *United States v. Kendall*, 475 F.3d 961, 964 (8th

-4-

Cir. 2007). Our first decision in this case explained that the government's argument on reasonable suspicion was not "waived or forfeited," and directed the district court "to make any necessary factual findings and to resolve the legal issue of reasonable suspicion." *Traylor*, 840 F. App'x at 895. The court was authorized to supplement its factual findings on remand, and there was no error in finding additional facts.

Traylor next argues that the district court erred in concluding that reasonable suspicion supported the extended seizure. In evaluating the question, we consider the totality of the circumstances, and eschew a "divide-and-conquer analysis" in which the sufficiency of individual facts are considered in isolation. *Arvizu*, 534 U.S. at 274.

Detective Brown knew that Traylor was associated with the red Dodge Charger involved in the traffic stop on August 9. Brown had seen Traylor driving the vehicle before August 1; another investigator informed Brown that Traylor "typically" drove the Charger. In the weeks before the stop, Brown saw the Charger parked at two different residences where he reasonably believed that drug trafficking occurred. Brown's belief about the locations and drug trafficking was supported by his own observations, a report from at least one informant, and information from another police department. And it is reasonable to infer that when a car is parked in front of a residence, the driver of the car is associated with the residence. Brown's suspicion about Traylor's association with drug trafficking was heightened during the stop when Traylor produced a bill of sale for the Charger showing that the previous owner was a known drug financer. Traylor also admitted that he was on probation for a drug-related offense.

After Traylor consented to a search of his person, Brown discovered that Traylor was carrying two cell phones and three hundred dollars in currency. The district court credited Brown's testimony that drug traffickers commonly carry two phones in order to use one for legitimate business and another for criminal activity.

*See United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011); *United States v. Villavicencio*, 825 F. App'x 88, 98 (4th Cir. 2020). Traylor's possession of a substantial amount of cash was probative too; drug trafficking is a cash business. Traylor also behaved in a way that raised eyebrows. He walked quickly toward the service station as Brown approached, and then twice locked his car during the investigative stop—suggesting to Brown that he was trying to avoid contact with law enforcement and to hide something from the officer.

Traylor argues that many people carry one cell phone for work and another phone for personal use, that one of the phones might not have been functional, and that three hundred dollars is not a large amount of cash for an employed person. He points out that he walked toward the station before Brown made an effort to stop him, and that many drivers are nervous when confronted by police. But the government's burden is not to rule out innocent conduct definitively; it is to establish reasonable suspicion of criminal activity based on the entire situation. *Arvizu*, 534 U.S. at 277. Here, the totality of the circumstances—Traylor's regular use of a vehicle that was observed recently at known drug trafficking locations, his acquisition of the vehicle from a known drug financer, his criminal history involving a drug offense, his possession of items commonly associated with drug trafficking, and his determined efforts to shield the contents of his vehicle—add up to reasonable suspicion of drug-related activity. The brief extension of the traffic stop to facilitate a dog sniff of the vehicle was therefore reasonable under the Fourth Amendment.

The judgment of the district court is affirmed.

_____