# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1646
_____

United States of America

*Plaintiff - Appellee*

v.

Heather Lynn Schaefer

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: October 21, 2022
Filed: April 6, 2023
_____

Before KELLY, WOLLMAN, and KOBES, Circuit Judges.
_____

KELLY, Circuit Judge.

Following her conditional guilty plea to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, Heather Schaefer appeals from the district court's[1] denial of her motion to suppress evidence and

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

statements she made in connection with warrantless parole searches of her person and residence. Because law enforcement had reasonable suspicion to conduct the searches, we affirm.

## I.

During the spring of 2020, Schaefer was on parole stemming from a prior state drug conviction and was being supervised in Yankton, South Dakota, by Parole Officer Autumn Novak. As a condition of her parole, Schaefer was subject to a South Dakota "Parole/Suspended Sentence Supervision Agreement." The Supervision Agreement stated in relevant part, "I will submit my person, property, place of residence, vehicle and personal effects to search and seizure at any time, with or without a search warrant, whenever reasonable suspicion is determined by a parole agent or law enforcement."

On March 2, 2020, Special Agent Ryan Pennock of the South Dakota Division of Criminal Investigation (DCI) learned from a source that Schaefer was involved in methamphetamine trafficking. Agent Pennock subsequently interviewed the source on March 2 and March 4, 2020. During the first interview, the source told Agent Pennock that he bought and sold methamphetamine with Schaefer and indicated that Schaefer was obtaining methamphetamine from Sioux City, Iowa. During the second interview, the source provided additional information, including that Schaefer lived in a particular trailer near her parole office and that she drove a small red car. Agent Pennock also saw that the source had Schaefer's name and number saved in his phone.

Following these interviews, Agent Pennock reviewed text messages on the source's phone, exchanged between Schaefer and the source in late-February 2020, which Agent Pennock believed were consistent with the source's account of his drug dealings with Schaefer and where she was getting her drugs. For example, according to the text messages, Schaefer visited a Hard Rock casino in Sioux City at least once for a drug transaction, which Agent Pennock believed corroborated the source's

statement that Schaefer obtained her methamphetamine from Sioux City. Agent Pennock also verified the location of Schaefer's residence, her phone number, and her car make and model. Based on this independent corroboration, Agent Pennock determined that the source and the information he supplied were reliable, and he began investigating Schaefer for drug-related crimes.

On April 2, 2020, Agent Pennock applied for and received a warrant to monitor Schaefer's phone location and a pen register/trap and trace order to track who she was communicating with, the frequency of the communication, and the date and duration of the communication. The monitoring was authorized up to May 15, 2020. In the applications, Agent Pennock detailed Schaefer's criminal history, describing 11 separate times Schaefer had been charged with or convicted on drug charges between 1997 and 2018. The applications also included information Agent Pennock received from the source about Schaefer's suspected involvement in drug trafficking.

Meanwhile, Officer Novak had increased Schaefer's monthly parole visits because she had been terminated from a substance abuse treatment program for lack of attendance and participation. Sometime in April, law enforcement also informed Officer Novak that they were investigating Schaefer for drug distribution.

Between April 2 and May 15, 2020, law enforcement learned that Schaefer, who had no known source of lawful income, frequently drove throughout town at various times of the day and night, communicated with individuals known or believed to be involved with illegal drugs, and visited casinos—places law enforcement believed Schaefer engaged in illegal drug activity. On at least one occasion, Schaefer stopped by a house that law enforcement knew was a location for buying and selling illegal drugs.

On May 19, 2020, Agent Pennock, Officer Novak, and Yankton Police Department Officer Joseph Erickson met to discuss a plan to locate Schaefer and to conduct parole searches of her person and residence. Officer Novak ultimately gave

law enforcement the "green light" to conduct the searches. After the meeting concluded, Officer Erickson saw Schaefer in her car driving away from a Gramps gas station in Yankton. As he followed her, Schaefer "continued to look back in her rearview mirror," suggesting she knew Officer Erickson was there. Officer Erickson followed Schaefer to a Casey's gas station, approached her at a gas pump, and told her she was "being detained for parole." During their interactions with Schaefer, officers believed she acted nervous or was otherwise stalling. For example, while filling her tank, Schaefer lit a cigarette, which Officer Erickson viewed as a nervous reaction and not a "safe thing to do." In addition, officers noticed that the gas nozzle clicked when Schaefer tried to fill her tank, and she was able to put only about $3 worth of gas in her car before it started to overflow. Officers believed her repeated effort to fill an already-full gas tank was an "attempt[] to stall." And when Officer Erickson refused to allow Schaefer to use the restroom, Schaefer told him that Officer Novak had given her permission to do so, although that was not true. Schaefer's deception added to officers' belief that she was stalling.

After exiting the gas station restroom, Schaefer was patted down and officers found "over $1,000 in cash on her person." During a subsequent parole search of Schaefer's home, officers found approximately 107 grams of methamphetamine, a digital scale with methamphetamine residue, baggies, and syringes. After she was Mirandized, Schaefer agreed to an interview with Agent Pennock during which she made certain incriminating statements.

On March 2, 2021, Schaefer was indicted for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Schaeffer moved to suppress evidence seized during the parole searches and statements she made in her post-Miranda interview, which the district court denied. Schaefer then entered a conditional guilty plea. Following Schaefer's guilty plea, the district court sentenced her to 120 months in prison and five years of supervised release. Schaefer now appeals the denial of her motion to suppress.

## II.

In our review of the district court's denial of Schaefer's motion to suppress, we examine the district court's findings of fact for clear error, and we review de novo whether the searches violated the Fourth Amendment. United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009). Schaefer does not dispute the validity of her parole search condition but argues that law enforcement lacked reasonable suspicion to conduct parole searches of her person or her residence. See United States v. Becker, 534 F.3d 952, 956 (8th Cir. 2008) ("In the context of a probationary search condition, reasonable suspicion that the probationer has violated the terms of h[er] probation is sufficient to justify a search.")

"Reasonable suspicion must be supported by more than a 'mere hunch,'" but the suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015) (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002)). "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010). In assessing whether an officer had reasonable suspicion of wrongdoing sufficient to support a warrantless search of a parolee, we do not look at the officers' "subjective purpose for the search." Id. Rather, "we look only at whether the . . . officers' conclusion that reasonable suspicion existed was objectively reasonable" at the "time of the search." Id. Moreover, "innocent facts, when considered together, can give rise to a reasonable suspicion." United States v. Lebrun, 261 F.3d 731, 733 (8th Cir. 2001) (explaining that "innocent facts" can support a reasonable suspicion determination "when we view the totality of the circumstances through the perspective of an experienced law enforcement officer trained in crime detection and acquainted with the behavior of criminals").

Schaefer argues that law enforcement relied on mere hunches to justify the parole searches. However, when viewing the facts in totality, law enforcement had reasonable suspicion that Schaefer was engaged in illegal drug activity. Prior to the May 19 searches, law enforcement knew that (1) Schaefer had an extensive drug-related criminal history; (2) a source said Schaefer was engaged in methamphetamine distribution, an assertion subsequently corroborated by text messages; (3) Schaefer had no lawful source of income, yet drove around town at all hours and frequented casinos; (4) Schaefer communicated with individuals law enforcement believed were engaged in illegal drugs and visited a residence law enforcement believed was used to engage in drug transactions; and (5) Schaefer's parole supervision increased because she was terminated from a drug rehabilitation program. And when law enforcement approached Schaefer on the day of the searches, she appeared nervous, attempted to stall, and engaged in deceptive behavior.

Schaefer disagrees. She argues that her criminal history alone cannot be a basis for reasonable suspicion, her termination from the drug rehabilitation program was merely a "minor infraction," and law enforcement's surveillance of her phone showed only that she was communicating with individuals known by law enforcement to be engaged in illegal drugs but did not otherwise reveal the contents of those communication. Schaefer also asserts that, despite monitoring her activities for 45 days, law enforcement gathered no "concrete information" that she was engaged in drug trafficking. For example, she made no trips to Sioux City, Iowa, the suspected location of her drug supplier, and officers established only "[m]ere association" with others involved in the illegal drug trade. As to the events of May 19, Schaefer contends her nervousness was simply a natural byproduct of being followed and detained by law enforcement, and she was merely "careless" in overfilling her gas tank and lighting a cigarette near highly flammable liquid.

In determining whether law enforcement had reasonable suspicion based on the "totality of the circumstances," we "eschew a 'divide-and-conquer analysis' in which the sufficiency of individual facts are considered in isolation." United States

v. Traylor, 14 F.4th 804, 807 (8th Cir. 2021) (quoting Arvizu, 534 U.S. at 274)). Even if individual pieces of information relied on by law enforcement amount to little more than a hunch or are otherwise consistent with innocent activity, we look at the information as a whole, not in fragmented parts. See, e.g., United States v. Huerta, 655 F.3d 806, 809 (8th Cir. 2011) (stating that "[e]ven where each factor cited by law enforcement to support a seizure . . . 'is quite consistent with innocent' activity, the sum of the factors taken together can amount to reasonable suspicion."); United States v. Hightower, 716 F.3d 1117, 1121 (8th Cir. 2013) (explaining that courts must not look at each fact in isolation but rather must look at the officers' observations as a whole); see also United States v. Reddick, 910 F.3d 358, 361 (8th Cir. 2018) (explaining that an officer may have reasonable suspicion even when a defendant can put forth "innocent explanations . . . for each individual circumstance."); Traylor, 14 F.4th at 807–08 (stating "the government's burden is not to rule out innocent conduct definitively; it is to establish reasonable suspicion of criminal activity based on the entire situation.")  Here, law enforcement gathered a variety of information from March 2020 to May 19, 2020, regarding Schaefer and her involvement in illegal drug distribution, and officers were permitted to rely on their collective knowledge to support the decision to conduct a parole search. See Cronin v. Peterson, 982 F.3d 1187, 1193 (8th Cir. 2020) ("In forming reasonable suspicion, an officer may rely on information provided by other officers and all the information known to a team of officers involved in the investigation." (cleaned up)).

Finally, Schaefer argues that the source's information, which was provided more than two and a half months before the searches, was "stale" and thus could not provide reasonable suspicion of criminal activity.  But law enforcement was investigating Schaefer for ongoing criminal conduct, and nothing during the investigation diminished Agent Pennock's suspicion that Schaefer was engaged in illegal conduct.  Indeed, both Officer Novak and Agent Pennock testified that the events on May 19 increased their suspicion.  When viewed in isolation, some of the facts relied on by the officers may not be enough to support reasonable suspicion, but combined they cross the threshold.  See United States v. Johnson, 31 F.4th 618, 622 (8th Cir. 2022) (concluding that the defendant's past convictions and

involvement in a suspected drug deal two months before he was stopped was not "stale," in part because law enforcement was investigating him for drug-related crimes, knew of his criminal history involving drugs, and was informed he was a known drug trafficker).

Based on the totality of the information available to the officers, we agree with the district court that law enforcement had reasonable suspicion that Schaefer was engaged in illegal drug distribution sufficient to justify the warrantless parole searches.[2]

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[2]Schaefer's only argument regarding the statements she made in her post-Miranda interview with Agent Pennock is that those statements should be suppressed as fruits of the unlawful searches. Because we have determined law enforcement had reasonable suspicion to conduct the warrantless parole searches, we similarly affirm the district court's denial of her motion to suppress the statements.