# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3194
_____

United States of America

*Plaintiff - Appellee*

v.

Tyrell Jarule Gaston

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: May 10, 2024
Filed: July 29, 2024

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After probation officers found a loaded gun in Tyrell Gaston's truck, he was charged with being a felon in possession of ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2). He pleaded guilty, preserving his right to appeal the district court's[1]

_____

[1]The Honorable C.J. Williams, then United States District Judge for the Northern District of Iowa, now Chief Judge, adopting in part and modifying in part

denial of his suppression motion.  Because reasonable suspicion supported the search, we affirm.

I.

An Iowa state court put Gaston on three years' probation following a deferred judgment for a robbery gone awry.  Gaston and a group including his cousin lured a drug dealer into an ambush and rushed him from behind.  A gunfight ensued, ending with Gaston injured and his cousin killed.

Less than a month after signing his probation agreement, Gaston got mixed up in another violent conflict involving a gun.  He and his father allegedly rolled up on his uncle and a passenger sitting in a car.  Gaston's father yelled, "Kill his ass," and Gaston opened fire.  Police found a bullet hole in the car and nine shell casings in the area.  Within a week, he was at it again—this time during an argument with his child's mother over visitation.  As the complaint reads,[2] Gaston pointed a gun at her, racked the slide, threatened to assault her, and broke a window in her home.  Police tracked Gaston down and found a gun in his car.  Between the two incidents, he faced charges of attempted murder, intimidation with a dangerous weapon, going armed with intent, harassment, and criminal mischief.

Gaston had a quiet few months after that, with just two probation violations for missing meetings with his probation officer.  Then security footage showed him at a nightclub hours before three people were killed in a shootout.  Gaston wasn't a suspect, but he was underage and out past curfew, landing him two more violations and prompting his arrest.

---

the report and recommendations of the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

[2]Though the charges were later dismissed and the events were never proven, what is pertinent is the information available to the officers at the time of the truck search. *See United States v. Daniel*, 887 F.3d 350, 355 (8th Cir. 2018).  That includes the allegations in the then-pending complaint.

His probation officer, Michael Stransky, called Officer Steven Warner to assist with the arrest. Officer Warner had worked in the High Risk Unit—probation's law enforcement wing—for 20 of his 30-plus years in probation. He patted Gaston down and found keys to his truck. When he asked him if there was anything in the truck that would get him in trouble, he answered, "No, but there's a backpack I picked up of my brother's." Officer Warner thought Gaston's move to immediately disclaim the backpack indicated that there was something in there he shouldn't have. Based on this response, he decided to search the truck. He found the backpack in the front passenger seat and inside, Gaston's personal belongings and a 9mm gun with a loaded, extended magazine.

II.

In his probation agreement, Gaston consented to searches of his "person, property, place of residence, vehicle and personal effects . . . at any time, with or without a search warrant or warrant of arrest, by any probation officer having reasonable grounds to believe contraband is present." We accept the parties' stipulation that "reasonable grounds" tracks the Fourth Amendment's "reasonable suspicion" standard. We review the court's findings of fact for clear error and its conclusion that Officer Warner had reasonable suspicion for the search *de novo*. *United States v. Schaefer*, 64 F.4th 1004, 1007 (8th Cir. 2023).

"Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *United States v. Knights*, 534 U.S. 112, 119 (2001) (cleaned up) (citation omitted). "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* at 121. "The concept of reasonable suspicion . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted). "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a

particularized and objective basis for suspecting wrongdoing." *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).

Gaston argues that officers had no more than a "hunch" to support the search. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). But Officer Warner was aware that at just 18 years old, Gaston already had a concerning history of violent conduct, both proven and alleged. He was on probation for the robbery resulting in his cousin's death, pretrial release for attempting to murder his uncle and his uncle's passenger, and pretrial release for harassing and threatening his child's mother—all offenses involving guns. *Cf. United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) (considering prior felony convictions for similar crimes as relevant factor in determining reasonable suspicion). And based on Officer Warner's experience, Gaston's knee-jerk reaction distancing himself from the backpack indicated that there was contraband inside. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" (citation omitted)).

We do not suggest that either Gaston's prior conduct or his reaction to Officer Warner's question is enough standing alone to justify the search. "Even if individual pieces of information relied on by law enforcement amount to little more than a hunch or are otherwise consistent with innocent activity, we look at the information as a whole, not in fragmented parts." *Schaefer*, 64 F.4th at 1008. The whole picture shows that Officer Warner had a particularized and objective basis for the search.

Gaston disagrees, hinging his argument on a credibility dispute. He insists that the decisionmaker was Officer Stransky, who testified that Gaston's backpack comment was immaterial—they were going to search the truck regardless. But the district court found that Officer Warner was the one "taking the lead" on both the arrest and the search, and it credited his testimony that he decided to search the truck

only after Gaston's suspicious response to his question. This credibility determination made "after a hearing on the merits of a motion to suppress is 'virtually unassailable on appeal.'" *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007) (citation omitted).

## III.

We affirm the district court's judgment.

_____