# SUPREME COURT OF THE UNITED STATES

ALEXANDER L. BAXTER *v.* BRAD BRACEY, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 18–1287. Decided June 15, 2020

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, dissenting from the denial of certiorari.

Petitioner Alexander Baxter was caught in the act of burgling a house. It is undisputed that police officers released a dog to apprehend him and that the dog bit him. Petitioner alleged that he had already surrendered when the dog was released. He sought damages from two officers under Rev. Stat. §1979, 42 U. S. C. §1983, alleging excessive force and failure to intervene, in violation of the Fourth Amendment. Applying our qualified immunity precedents, the Sixth Circuit held that even if the officers' conduct violated the Constitution, they were not liable because their conduct did not violate a clearly established right. Petitioner asked this Court to reconsider the precedents that the Sixth Circuit applied.

I have previously expressed my doubts about our qualified immunity jurisprudence. See *Ziglar* v. *Abbasi*, 582 U. S. \_\_\_, \_\_\_–\_\_\_ (2017) (THOMAS, J., concurring in part and concurring in judgment) (slip op., at 2–6). Because our §1983 qualified immunity doctrine appears to stray from the statutory text, I would grant this petition.

## I

### A

In the wake of the Civil War, Republicans set out to secure certain individual rights against abuse by the States. Between 1865 and 1870, Congress proposed, and the States ratified, the Thirteenth, Fourteenth, and Fifteenth Amendments. These Amendments protect certain rights and gave

Congress the power to enforce those rights against the States.

Armed with its new enforcement powers, Congress sought to respond to "the reign of terror imposed by the Klan upon black citizens and their white sympathizers in the Southern States." *Briscoe* v. *LaHue*, 460 U. S. 325, 337 (1983). Congress passed a statute variously known as the Ku Klux Act of 1871, the Civil Rights Act of 1871, and the Enforcement Act of 1871. Section 1, now codified, as amended, at 42 U. S. C. §1983, provided that

> "any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall . . . be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . ." Act of Apr. 20, 1871, §1, 17 Stat. 13.

Put in simpler terms, §1 gave individuals a right to sue state officers for damages to remedy certain violations of their constitutional rights.

### B

The text of §1983 "ma[kes] no mention of defenses or immunities." *Ziglar*, *supra*, at ___ (opinion of THOMAS, J.) (slip op., at 2). Instead, it applies categorically to the deprivation of constitutional rights under color of state law.

For the first century of the law's existence, the Court did not recognize an immunity under §1983 for good-faith official conduct. Although the Court did not squarely deny the availability of a good-faith defense, it did reject an argument that plaintiffs must prove malice to recover. *Myers* v. *Anderson*, 238 U. S. 368, 378–379 (1915) (imposing liability); *id.,* at 371 (argument by counsel that malice was an

essential element). No other case appears to have established a good-faith immunity.

In the 1950s, this Court began to "as[k] whether the common law in 1871 would have accorded immunity to an officer for a tort analogous to the plaintiff's claim under §1983." *Ziglar*, *supra*, at \_\_\_ (opinion of THOMAS, J.) (slip op., at 4). The Court, for example, recognized absolute immunity for legislators because it concluded Congress had not "impinge[d] on a tradition [of legislative immunity] so well grounded in history and reason by covert inclusion in the general language" of §1983. *Tenney* v. *Brandhove*, 341 U. S. 367, 376 (1951). The Court also extended a qualified defense of good faith and probable cause to police officers sued for unconstitutional arrest and detention. *Pierson* v. *Ray*, 386 U. S. 547, 557 (1967). The Court derived this defense from "the background of tort liabilit[y] in the case of police officers making an arrest." *Id.,* at 556–557. These decisions were confined to certain circumstances based on specific analogies to the common law.

Almost immediately, the Court abandoned this approach. In *Scheuer* v. *Rhodes*, 416 U. S. 232 (1974), without considering the common law, the Court remanded for the application of qualified immunity doctrine to state executive officials, National Guard members, and a university president, *id.,* at 234–235. It based the availability of immunity on practical considerations about "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based," *id.,* at 247, rather than the liability of officers for analogous common-law torts in 1871. The Court soon dispensed entirely with context-specific analysis, extending qualified immunity to a hospital superintendent sued for deprivation of the right to liberty. *O'Connor* v. *Donaldson*, 422 U. S. 563, 577 (1975); see also *Procunier* v. *Navarette*, 434 U. S. 555, 561 (1978) (prison officials and officers).

Then, in *Harlow* v. *Fitzgerald*, 457 U. S. 800 (1982), the Court eliminated from the qualified immunity inquiry any subjective analysis of good faith to facilitate summary judgment and avoid the "substantial costs [that] attend the litigation of" subjective intent, *id.,* at 816. Although *Harlow* involved an implied constitutional cause of action against federal officials, not a §1983 action, the Court extended its holding to §1983 without pausing to consider the statute's text because "it would be 'untenable to draw a distinction for purposes of immunity law.'" *Id.,* at 818, n. 30 (quoting *Butz* v. *Economou*, 438 U. S. 478, 504 (1978)). The Court has subsequently applied this objective test in §1983 cases. See, *e.g., Ziglar*, 582 U. S., at ___ (majority opinion) (slip op., at 28).[1]

## II

In several different respects, it appears that "our analysis is no longer grounded in the common-law backdrop against which Congress enacted the 1871 Act." *Id.*, at ___ (opinion of THOMAS, J.) (slip op., at 5).

There likely is no basis for the objective inquiry into clearly established law that our modern cases prescribe. Leading treatises from the second half of the 19th century and case law until the 1980s contain no support for this "clearly established law" test. Indeed, the Court adopted the test not because of "'general principles of tort immunities and defenses,'" *Malley* v. *Briggs*, 475 U. S. 335, 339 (1986), but because of a "balancing of competing values" about litigation costs and efficiency, *Harlow*, *supra*, at 816.

There also may be no justification for a one-size-fits-all, subjective immunity based on good faith. Nineteenth-century officials sometimes avoided liability because they exercised their discretion in good faith. See, *e.g., Wilkes* v.

---

[1] I express no opinion on qualified immunity in the context of implied constitutional causes of action against federal officials. See, *e.g., Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971).

*Dinsman*, 7 How. 89, 130–131 (1849); see also Nielson & Walker, A Qualified Defense of Qualified Immunity, 93 Notre Dame L. Rev. 1853, 1864–1868 (2018); Baude, Is Qualified Immunity Unlawful? 106 Cal. L. Rev. 45, 57 (2018); Engdahl, Immunity and Accountability for Positive Governmental Wrongs, 44 U. Colo. L. Rev. 1, 48–55 (1972). But officials were not *always* immune from liability for their good-faith conduct. See, *e.g., Little* v. *Barreme*, 2 Cranch 170, 179 (1804) (Marshall, C. J.); *Miller* v. *Horton*, 152 Mass. 540, 548, 26 N. E. 100, 103 (1891) (Holmes, J.); see also Baude, *supra,* at 55–58; Woolhandler, Patterns of Official Immunity and Accountability, 37 Case W. Res. L. Rev. 396, 414–422 (1986); Engdahl, *supra*, at 14–21.

Although I express no definitive view on this question, the defense for good-faith official conduct appears to have been limited to authorized actions within the officer's jurisdiction. See, *e.g., Wilkes*, *supra*, at 130; T. Cooley, Law of Torts 688–689 (1880); J. Bishop, Commentaries on Non-Contract Law §773, p. 360 (1889). An officer who acts unconstitutionally might therefore fall within the exception to a common-law good-faith defense.

Regardless of what the outcome would be, we at least ought to return to the approach of asking whether immunity "was 'historically accorded the relevant official' in an analogous situation 'at common law.'" *Ziglar*, *supra*, at \_\_\_ (opinion of THOMAS, J.) (slip op., at 3) (quoting *Imbler* v. *Pachtman*, 424 U. S. 409, 421 (1976)). The Court has continued to conduct this inquiry in absolute immunity cases, even after the sea change in qualified immunity doctrine. See *Burns* v. *Reed*, 500 U. S. 478, 489–492 (1991). We should do so in qualified immunity cases as well.[2]

───────────

[2] Qualified immunity is not the only doctrine that affects the scope of relief under §1983. In *Monroe* v. *Pape*, 365 U. S. 167 (1961), the Court held that an officer acts "'under color of any statute, ordinance, regulation, custom, or usage of any State'" even when state law did not authorize his action, *id.*, at 183. Scholars have debated whether this holding is

THOMAS, J., dissenting

\*　　\*　　\*

I continue to have strong doubts about our §1983 qualified immunity doctrine.  Given the importance of this question, I would grant the petition for certiorari.

—————

correct.  Compare Zagrans, "Under Color of" *What* Law: A Reconstructed Model of Section 1983 Liability, 71 Va. L. Rev. 499, 559 (1985), with Winter, The Meaning of "Under Color of" Law, 91 Mich. L. Rev. 323, 341–361 (1992), and Achtenberg, A "Milder Measure of Villainy": The Unknown History of 42 U. S. C. §1983 and the Meaning of "Under Color of" Law, 1999 Utah L. Rev. 1, 56–60.  Although concern about revisiting one doctrine but not the other is understandable, see *Crawford-El* v. *Britton*, 523 U. S. 574, 611 (1998) (Scalia, J., joined by THOMAS, J., dissenting), respondents—like many defendants in §1983 actions—have not challenged *Monroe.*