# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1430

_____

Davdrin Goffin

*Plaintiff - Appellant*

v.

Robbie K. Ashcraft, Individually and Official capacity as Police Officer, Warren, AR; Randy Peek, Individually and Official capacity as Chief of Police, Warren, AR; Bryan Martin, Individually and Official capacity as Mayor, Warren, AR; John Doe, 1-10; Warren, Arkansas, City of

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: April 18, 2019
Filed: October 15, 2020

_____

Before SMITH, Chief Judge, KELLY and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Officer Robbie Ashcraft tried to arrest Davdrin Goffin for burglary and stealing handguns, bullets, and prescription pain medication. Prior to the arrest, multiple

witnesses told her that Goffin was armed, possibly intoxicated, and dangerous. When Goffin broke free from arrest, fled toward a group of bystanders, and moved as though he was reaching into his waistband, she shot him once in the back.

This would be a relatively straightforward qualified immunity case if those were all the facts. An officer may constitutionally use deadly force when she reasonably believes a fleeing suspect poses a threat of serious harm to herself or others. But Goffin claims (and Officer Ashcraft disputes) that he was patted down by another officer just before he fled. The pat down removed nothing from Goffin and was later shown to have been unusually ineffective; the officer failed to discover that Goffin was carrying a loaded magazine and extra bullets.

We conclude that Officer Ashcraft is entitled to qualified immunity on these facts because it was not clearly established at the time of the shooting that a pat down that removes nothing from a suspect eliminates an officer's probable cause that the suspect poses a threat of serious physical harm.

I.

We construe the facts in Goffin's favor. In September 2012, Goffin's uncle, Tommy Reddick, reported to Officer Ashcraft and Officer Aaron Hines that his home had been burgled—and he suspected Goffin was responsible for stealing two handguns, a box of bullets, and a bottle of painkillers. Reddick told the officers that earlier that day Goffin came to his house and asked for a gun, explaining that he lost his own pistol fleeing from the police. Reddick refused and left the house. When he returned, he saw Goffin was still nearby, arguing with a man in a black pickup truck. Once inside his house, he discovered that someone had snuck in through a back window, broken down a bedroom door, and stolen guns, ammunition, and pills. Reddick warned Officer Ashcraft, "This dude is out of control!" and, "Y'all better be ready to fight when you find him."

When the officers started searching for Goffin, Officer Ashcraft stopped a black truck that looked like the one Reddick had described. The driver, Dewayne Moore, told her that earlier Goffin had asked him for a ride. Moore initially told Goffin no, but Goffin threatened him, saying "take me to the goddamn car wash" and then displayed two guns that matched the descriptions of Reddick's stolen pistols. Frightened, Moore gave Goffin a ride. He too warned Officer Ashcraft about Goffin, telling her that Goffin was drunk and that Moore was scared he would rob him. After the shooting, he recounted to police that Goffin looked like he "was going to do something stupid," like he didn't "give a damn . . . like, I'm going to take you out or whatever."

After Officer Ashcraft interviewed Moore, Officer Hines called her and told her that Goffin was at a nearby body shop. The officers arrived separately but then walked together toward a crowd of people in the parking lot. Officer Ashcraft asked where Goffin was and the owner of the body shop directed them toward the garage. In front of the garage, the officers found Goffin sitting in a car talking on a Bluetooth headset. Both officers approached the vehicle with guns drawn, but before they got there Officer Hines holstered his pistol and drew a taser.

The officers demanded that Goffin exit with his hands raised, which he did. They then escorted him to the back of the car and Officer Ashcraft claims she saw something "bumping in [Goffin's] right front pocket." Goffin denies anything was in that pocket. At the back of the vehicle, Goffin says that Officer Hines patted him down and "searched every part of [his] body," including feeling for items in his pockets and around his waist. Goffin admits Officer Hines "didn't go into [his] pockets" and did not remove anything from his body.

Officer Hines started to place Goffin in handcuffs, but before he could finish, Goffin pushed off the car and fled toward a group of seven or eight bystanders. With his back to the officers, he raised his right shoulder, which Officer Ashcraft interpreted

as a reach for something in his pocket or his waistband. She then shot him once in the back.

The shooting occurred in a "split second." Goffin says he took no more than two steps and Officer Ashcraft agrees he made it only "a very short distance" before she fired. After he was shot, officers discovered that the patdown had missed a loaded 9mm pistol magazine and several loose bullets. The stolen guns were discovered within reach of where Goffin had been sitting in the car, but Goffin did not have a weapon on him.

Goffin survived the gunshot wound and brought a 1983 action against Officer Ashcraft, the city, and several other municipal employees, claiming that Officer Ashcraft used excessive force against him and that the other defendants had failed to properly train and supervise her. The district court[1] granted summary judgment to the defendants, finding that Officer Ashcraft was entitled to qualified immunity because her actions were objectively reasonable as a matter of law. Because the underlying excessive force claim failed, so did Goffin's claims against the other defendants. After dismissing all federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims. Goffin timely appealed and we have jurisdiction. 28 U.S.C. § 1291.

II.

We review the grant of summary judgment on the basis of qualified immunity *de novo*. *Michael v. Trevena*, 899 F.3d 528, 531 (8th Cir. 2018). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to [Goffin] and giving him the benefit of all reasonable inferences, shows there is no genuine issue

---

[1]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

of material fact." *Morgan v. A.G. Edwards*, 486 F.3d 1034, 1039 (8th Cir. 2007). We avoid judging an officer's split-second decision (made with imperfect information) against one we would make with a complete record and the benefit of hindsight. *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014).

We analyze cases involving the use of deadly force against a fleeing suspect under the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). An officer's actions are justified when they are "objectively reasonable in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Capps v. Olson*, 780 F.3d 879, 884 (8th Cir. 2015). An officer is justified in using lethal force when she "has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or others." *Garner*, 471 U.S. at 11.

Officer Ashcraft is entitled to qualified immunity if her conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We do "not define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (citation omitted).

Goffin must identify "either 'controlling authority' or 'a robust consensus of cases of persuasive authority' that 'placed the statutory or constitutional question beyond debate' at the time of the alleged violation." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (quoting *Ashcroft*, 563 U.S. at 741–42). "A plaintiff's failure to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment is often fatal to a claim outside of obvious cases." *K. W. P. v. Kansas City Public Schools*, 931 F.3d 813, 828 (8th Cir. 2019) (cleaned up).

By the time that she confronted Goffin at the body shop, Officer Ashcraft objectively and reasonably believed that Goffin was dangerous.[2] *Capps*, 780 F.3d at 884–85. She knew that he had lost a gun while fleeing from the police and had strong evidence that he had recently stolen two more. Moore told her Goffin was drunk and that he had threatened him with the stolen guns. And to top it off, Goffin's uncle had warned her that Goffin was spoiling for a fight.

The case turns on whether the pat down changes our analysis.[3] Goffin argues that the pat down creates an issue of material fact because, if it occurred, then Officer Ashcraft must have *known* he was unarmed, or at least that there is an issue of material fact as to whether she knew he was unarmed. But whether probable cause exists is a *legal* question, not a factual one. *See United States v. Kelley*, 329 F.3d 624, 628 (8th Cir. 2003). He must therefore provide a case clearly establishing that a pat down that recovered nothing[4] eliminated Officer Ashcraft's objectively reasonable belief that he was armed and dangerous.

---

[2]The dissent suggests this a question for the jury. But "whether [an] officer['s] actions were objectively reasonable in light of clearly established law" is a legal question for the courts. *Littrell v. Franklin*, 388 F.3d 578, 586 (8th Cir. 2004); *see Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) ("[T]he reasonableness of Scott's actions—or, in Justice Stevens' parlance, '[w]hether [respondent's] actions have risen to a level warranting deadly force,'—is a pure question of law.") (citation omitted).

[3]We refer to the search as a "pat down" because that is the language the parties use and it describes how Goffin alleges he was searched. But the search was not a limited *Terry*-style stop, as the dissent suggests. Rather, it appears to have been the first step in a full search incident to arrest.

[4]In addition to recovering nothing, the record demonstrates that this was an unusually ineffective pat down that missed items that should have been discovered. Because Goffin nevertheless insists that the pat down covered "every part of his body," and because determining the exact quality of the pat down is not necessary to our conclusion, we disregard this factual oddity and construe the pat down in the light most favorable to Goffin.

Goffin fails to point to such a case. He relies on *Tennessee v. Garner*, but that case stands for a general proposition and cannot clearly establish the rule in most cases. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). His reliance on *Wealot v. Brooks*, 865 F.3d 1119 (8th Cir. 2017), is similarly misplaced. In *Wealot*, the parties disputed whether an officer had seen the suspect throw down his gun and raise his hands in surrender. We reversed because the district court had improperly construed the record in favor of the officer moving for summary judgment. *Id.* at 1125–26. The district court did not make that mistake here and it is undisputed that Officer Ashcraft never saw any items removed from Goffin. And even if *Wealot* were factually analogous, it cannot have put Officer Ashcraft on notice that her conduct was illegal because it was decided four years after Goffin was shot. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (clearly established law must predate the alleged violation).

We therefore conclude that Officer Ashcraft is entitled to summary judgment because it is not clearly established that after observing a pat down that removes nothing from a suspect who an officer reasonably believed to be armed and dangerous, an officer cannot use lethal force against that suspect when he flees and moves as though he is reaching for a weapon. Nor do we think this is the "rare obvious case" in which "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quotation omitted).

The district court is affirmed.

SMITH, Chief Judge, concurring.

I concur in the court's determination that the unlawfulness of Officer Ashcraft's conduct was not *clearly established*. I write separately to express my view that Officer

Ashcraft did, however, violate Goffin's constitutional right to be free from excessive force.

According to Goffin, Officer Hines conducted a pat-down search for weapons. Goffin says Officer Hines checked around his waistband, felt his pockets, patted down his legs to his ankles, and "searched every part of [Goffin's] body." Statement of Facts in Supp. of Mot. for Summ. J., Ex. 13, at 18, *Goffin v. Peek*, No. 1:15-cv-01040 (W.D. Ark. Dec. 18, 2017), ECF No. 50-13. Officer Ashcraft testified to standing approximately four feet directly behind Goffin while he and Officer Hines stood at the rear of the vehicle. It is undisputed that Officer Hines did not remove anything from Goffin's person. Goffin alleges that after Officer Hines completed the search, he handcuffed Goffin's left hand and told Goffin to put his other hand behind his back. Instead of complying, Goffin pushed off of the car with his right hand and began to run toward the crowd in the parking lot.

As the court recognizes, "whether probable cause exists is a *legal* question, not a factual one." *See supra* Part II (citing *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003)). Construing the facts in the light most favorable to Goffin, Officer Ashcraft witnessed Officer Hines conduct a full body pat-down search for weapons on Goffin that recovered nothing. "The purpose of [a pat-down] search is . . . to allow the officer to pursue his investigation without fear of violence" and "must be strictly limited to that which is necessary for the *discovery of weapons* which might be used to harm the officer or others nearby." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (emphasis added) (internal quotations omitted); *see also United States v. Gilliam*, 520 F.3d 844, 847–48 (8th Cir. 2008) ("Following a valid *Terry* stop, the officer may conduct a limited pat-down search of the individual's outer clothing for the purpose of uncovering concealed weapons if the officer has a reasonable, articulable suspicion that the person is armed and dangerous.").

In my view, probable cause to believe that Goffin was armed dissipated upon completion of this full body pat-down search that revealed no weapons. Some cases analyzing probable cause in the context of investigatory stops have so held. *See, e.g.*, *United States v. Butler*, 223 F.3d 368, 375 (6th Cir. 2000) (although the police had reasonable suspicion of narcotics trafficking "to justify the initial stop," "once Defendant identified herself, answered the officer's questions, and consented to the patdown which did not reveal anything suspicious, the officers were required under the Fourth Amendment to allow Defendant to go free"); *United States v. McDow*, 206 F. Supp. 3d 829, 856 (S.D.N.Y. 2016) ("Here—when the officers continued to detain McDow after their questioning and thorough search of his pockets yielded no evidence of the suspected crime—the *Terry* stop became unreasonably intrusive and ripened into a de facto arrest that must be based on probable cause." (cleaned up)); *United States v. Felix*, No. 08-CR-68A, 2009 WL 483178, at *2 (W.D.N.Y. Feb. 25, 2009) (although police officers had reasonable suspicion that the defendant "might be armed with a weapon that he was attempting to sell illegally," "[o]nce it was determined that the defendant did not have the weapon on his person, the basis for the Fourth Amendment seizure dissipated . . . and the defendant should have been released"). The dissipation of probable cause to believe Goffin possessed a firearm should have reduced the officers' reasonable concern that Goffin posed an imminent threat to them or to bystanders. Thus, construing the facts in the light most favorable to Goffin, Officer Ashcraft violated Goffin's constitutional right to be free from excessive force by shooting him after witnessing a full body pat-down search that revealed no weapons.

Nonetheless, I agree with the court's determination that Officer Ashcraft is entitled to qualified immunity because Goffin has not identified "a *case clearly establishing* that a pat down that recovered nothing eliminated Officer Ashcraft's objectively reasonable belief that he was armed and dangerous." *See supra* Part II (emphasis added); *see also City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) (explaining that it is "particularly important in excessive force cases" that

"the clearly established right must be defined with specificity" and that "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue" (internal quotation omitted)). The Supreme Court's and this court's precedent make the definition of the protected right crucial. That precedent binds this court. The more precise the definition, the more difficult the claim. Had there been no pat-down search, the threat posed by an arrestee known to have been armed prior to the encounter would strongly favor the grant of qualified immunity.

In this case, the officer who shot Goffin was not the officer who conducted the pat-down search. A pat down is not an invasive search and oversights can occur. The possibility of an oversight by the pat-down officer means an observing officer may still need to exercise independent judgment as to a potential threat. Here, circumstances abruptly changed and a compliant arrestee bolted from custody with unknown motives and capabilities. Pat-down searches are conducted precisely to diminish the officers' concern that an arrestee is armed, but those searches are not foolproof. The absence of authority clearly establishing that Officer Ashcraft's actions, on these facts, was constitutionally prohibited supports the district court's grant of qualified immunity under existing precedent.[5]

---

[5]The evolved qualified immunity doctrine is experiencing increased legal and historical scrutiny. That scrutiny is warranted. A judicially created doctrine that bars constitutional claims against government officials otherwise enforceable through the right to a civil jury trial deserves close and continued examination. "[C]ogent critiques of qualified immunity as incongruent with the principles of statutory interpretation" abound. *Diamond v. Pennsylvania State Educ. Ass'n*, No. 19-2812, 2020 WL 5084266, at *14 (3d Cir. Aug. 28, 2020) (Fisher, J., concurring in the judgment) (citing *Baxter v. Bracey*, 140 S. Ct. 1862, 1864 (2020) (Thomas, J., dissenting from the denial of certiorari); William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45 (2018)). Justice Thomas recently reasserted his "previously expressed . . . doubts about [the Supreme Court's] qualified immunity jurisprudence." *Baxter*, 140 S. Ct. at 1862 (2020) (Thomas, J., dissenting from the denial of certiorari) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1869–72 (2017) (Thomas, J., concurring in part and

KELLY, Circuit judge, dissenting.

Officer Ashcraft never saw Goffin with a weapon, and she watched a fellow officer conduct a pat down that revealed no weapons. Yet Ashcraft shot Goffin in the back, in "a split-second," after he took "no more than two steps." Because I believe that the relevant law is clearly established—a question for the court to decide—and that a reasonable jury could find that Ashcraft's use of deadly force was objectively unreasonable, I respectfully dissent.

Police officers are not entitled to qualified immunity if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (cleaned up). Goffin argues Ashcraft violated his clearly established Fourth Amendment right to be free from excessive force. In assessing an excessive force claim, we ask whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989). Reasonableness must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others."[6] Loch v. City of

---

concurring in judgment)). As Justice Thomas points out, § 1983's text "makes no mention of defenses or immunities." *Id.* at 1862 (cleaned up). "Instead, it applies categorically to the deprivation of constitutional rights under color of state law." *Id.* at 1862–63.

[6]To the extent that a probable cause analysis is required here, we have not applied it under the clearly established prong and have only addressed it to determine whether an officer's actions were objectively reasonable. See Malone v. Hinman, 847 F.3d 949, 954 (8th Cir. 2017) (identifying the relevant question as "whether Officer Hinman's use of deadly force against Malone was objectively reasonable under the circumstances," and specifically whether the officer "had probable cause to believe"

-11-

Litchfield, 689 F.3d 961, 965 (8th Cir. 2012). "But where a person 'poses no immediate threat to the officer and no threat to others,' deadly force is not justified." Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). "Before employing deadly force, an officer should give some warning when it is feasible to do so." Loch, 689 F.3d at 967 (cleaned up).

Viewing the facts in the light most favorable to Goffin and giving him the benefit of all reasonable inferences, a jury could find that a reasonable officer would not have believed Goffin posed a threat of serious physical harm to the officer or others. See Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1039 (8th Cir. 2007) (summary judgment standard). Ashcraft heard from two witnesses that Goffin had two guns and ammunition in his possession. But after she arrived at the auto body shop, she never saw a gun in Goffin's possession. He was not holding a gun when he was in the car, or when he exited the car. At the back of the car, Hines patted Goffin down and "searched every part of [his] body," including feeling for items in his

that Malone posed a threat of serious physical harm, but not explicitly finding that probable cause existed); Partlow v. Stadler, 774 F.3d 497, 503 (8th Cir. 2014) (determining that a reasonable officer would have had probable cause when analyzing objective reasonableness); Aipperspach v. McInerney, 766 F.3d 803, 807 (8th Cir. 2014) (finding that "objectively reasonable officers had probable cause" to believe that suspect posed a threat of serious physical harm to the officers); Ribbey v. Cox, 222 F.3d 1040, 1043 (8th Cir. 2000) ("A shooting is objectively reasonable when the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical harm to the officer or others."). Cf. Wallace v. City of Alexander, 843 F.3d 763, 768–69 (8th Cir. 2016) (determining that the officer's actions were objectively unreasonable without addressing probable cause); Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (mentioning probable cause when addressing objective reasonableness but not reaching the question of whether the officer had probable cause).

pockets and around his waist.[7] Ashcraft saw the pat down revealed no weapons of any kind. Then, in a "split second," she shot him in the back—without warning—after he took "no more than two steps." She thought Goffin might have been reaching for a weapon. "An act taken based on a mistaken perception or belief" that a suspect is armed does not necessarily violate the Fourth Amendment, but only "if objectively reasonable." Loch, 689 F.3d at 966. In my view, based on these facts, a jury could find that Officer Ashcraft's actions were not objectively reasonable.

In addition, the law is clearly established even if no prior case contained the exact factual circumstance here: a pat down before the suspect fled. The Supreme Court has long rejected the notion that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Officials can be on notice that their

---

[7]The district court and the parties characterize this as a pat down, and the court here finds it "unusually ineffective." But the purpose of a pat down is "to determine whether the person is in fact carrying a weapon." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (citing Terry v. Ohio, 392 U.S. 1, 24 (1968)). It is not to discover every item a person may be carrying. See id. ("The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."); United States v. Murphy, 261 F.3d 741, 743 (8th Cir. 2001) ("The justification for a pat-down search is to ensure the safety of a law enforcement officer."). The pat down "must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Dickerson, 508 U.S. at 373. The pat down here would only be unsuccessful if Goffin had a weapon that the pat down failed to reveal. Neither party argues, and the court does not contend, that the loose bullets and loaded magazine found in Goffin's pocket are considered weapons.

Even assuming the pat down was somehow ineffective, however, its ineffectiveness would have no bearing on the qualified immunity analysis. The relevant inquiry here is whether an officer reasonably conducted herself based on the facts she had at the time of the shooting. And at the time of the shooting, Ashcraft did not know that items would later be found in Goffin's pocket.

-13-

conduct violates established law "even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002). Although existing precedent must have placed the statutory or constitutional question beyond debate, "general statements of the law are not inherently incapable of giving fair and clear warning to officers." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018). This is because, at its core, "clearly established" boils down to "whether the officer had fair notice that her conduct was unlawful." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).

Officer Ashcroft had "fair notice" that her conduct was unlawful. It is undisputed that "[s]ince 1985, it has been established by the Supreme Court that the use of deadly force against a fleeing suspect who does not pose a significant threat of death or serious physical injury to the officer or others is not permitted." Moore v. Indehar, 514 F.3d 756, 763 (8th Cir. 2008) (determining that a jury could find the officer's use of deadly force against an unarmed person fleeing the scene of a shooting objectively unreasonable). We have concluded that "an officer violate[s] *Garner* by using deadly force to seize an individual who did not possess a weapon and was attempting to flee the scene of a potentially violent crime." Wallace v. City of Alexander, 843 F.3d 763, 769 (8th Cir. 2016) (citing Moore, 514 F.3d at 763) (finding that a jury could determine the officer's use of deadly force on a fleeing, unarmed suspect objectively unreasonable, even though the officer had previously seen the suspect hold a gun); see also Ellison, 796 F.3d at 917 (acknowledging that "the precise scenario" of the case, shooting an armed person for standing in his apartment and refusing to lie down on the ground, does not appear in a reported decision but still finding that the officers were "on fair notice that the use of deadly force would not be reasonable").

The court relies on the precise scenario of a suspect fleeing after a pat down that revealed no weapons to conclude that Ashcroft violated no clearly established law. But the pat down is a novel fact that does not render inapplicable the clearly established law that officers "may not use deadly force unless the suspect poses a significant threat of

-14-

death or serious physical injury to the officer or others." <u>Ellison</u>, 976 F.3d at 917 (quotation omitted). And here, although the novel factual circumstance of a pat down may impact whether a reasonable jury finds Ashcraft's actions objectively reasonable, it does not render inapplicable the clearly established law that she cannot use deadly force unless a suspect poses a significant threat of death or serious physical injury to her or others.

I would reverse the grant of qualified immunity.

_____

-15-