**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 20 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARCUS D. BRICENO, | No.   21-55624 |
| Plaintiff-Appellee, | D.C. No.<br>3:16-cv-01665-JAH-AGS |
| v. | |
| BLAKE WILLIAMS, San Diego Police Officer, | MEMORANDUM* |
| Defendant-Appellant, | |
| and | |
| CHRIS CUMMINGS, San Diego Police Officer, | |
| Defendant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted March 9, 2022
Pasadena, California

Before:  BERZON, TALLMAN, and FRIEDLAND, Circuit Judges.
Dissent by Judge TALLMAN.

In this § 1983 excessive force case, Blake Williams, an officer with the San

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Diego Police Department, appeals the denial of his motion for summary judgment based on qualified immunity.

Our jurisdiction over an interlocutory appeal from the denial of summary judgment based on qualified immunity is limited. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Johnson v. Jones*, 515 U.S. 304, 313–14 (1995). We cannot hear challenges to the district court's factual determinations, "namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." *Est. of Anderson v. Marsh*, 985 F.3d 726, 731 (2021) (quoting *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam)). Our jurisdiction is "confined to the question" whether, "assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor," the defendant "would be entitled to qualified immunity as a matter of law." *George v. Morris*, 736 F.3d 829, 836 (2013) (quoting *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012)). On the merits of the qualified immunity analysis, we ask two questions: (1) Did the officer's conduct violate a constitutional right? (2) Was the right clearly established at the time of the alleged misconduct? *See Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

**1.** Addressing the constitutional violation prong, Williams largely premised his argument that he did not violate Briceno's constitutional rights on the undisputed facts that Briceno had run from Williams and that Briceno's hands

were beneath his body when Williams struck him. Williams also made *im*permissible factual contentions—for example, maintaining that he commanded Briceno to give him his hands even though the district court had determined that that fact was contested by Briceno's testimony to the contrary. These deviations do not so poison the well as to eliminate appellate jurisdiction entirely over the constitutional violation prong. *George*, 736 F.3d at 837.

Similarly, although Williams again quarreled with the district court's determinations regarding which facts were contested for purposes of the clearly-established law prong, we "discern enough of a distinct legal claim" based on properly characterized facts to "entertain" this prong of the qualified immunity analysis as well. *Id.*

We thus have jurisdiction over Williams's appeal, viewing the disputed facts as determined by the district court in the light most favorable to Briceno.

**2.** Turning to the merits of prong one of the qualified immunity issue: A police officer's use of force during an arrest is reasonable, and therefore lawful, only if the government interests at stake justify the "nature and quality of the intrusion" into the suspect's Fourth Amendment rights. *See Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Punching a face-down suspect constitutes significant force. *See Young v. County of Los Angeles*, 655 F.3d 1156, 1161 & n.6

(9th Cir. 2011); *Glenn*, 673 F.3d at 871. Whether that "degree of physical coercion" was justified by "countervailing governmental interests" is assessed by considering three non-exhaustive factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the officer or anyone else, and (3) whether the suspect was actively resisting or attempting to evade arrest. *See Graham*, 490 U.S. at 396.

None of these factors justifies the type and degree of force employed by Officer Williams. First, neither crime Williams posits is serious. Consuming alcohol in public can violate San Diego Municipal Code § 56.54(b), punishable as a civil infraction or misdemeanor.[1] But it is doubtful this crime was "at issue." The cited provision punishes consumption, not possession of an open container, and Officer Williams does not claim he saw Briceno *drink* alcohol in public. The Fourth Amendment allows a warrantless arrest for the commission of a misdemeanor only if the officer has "probable cause to believe that an individual has committed" the offense "in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Even if public consumption were at issue, there is no evidence that Briceno was intoxicated, and the crime would certainly not have been serious. *See Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (holding that

---

[1] *See* San Diego City Att'y's Off., *Fact Sheet: What Does the "Alcohol Ban" Mean to Me?*, https://www.sandiego.gov/sites/default/files/legacy/cityattorney/pdf/reports/alcoholbanfactsheet.pdf.

when a suspect appears, "[a]t most," "guilty of public intoxication," the "crime at issue [i]s not at all serious").

The second crime Williams raises is the misdemeanor of resisting or delaying Officer Williams in carrying out his duty to investigate. *See* Cal. Penal Code § 148(a)(1). Williams presents no argument for why this provision should be considered a serious crime for purposes of the *Graham* analysis. Instead, he argues only that he had probable cause to believe Briceno violated section 148(a)(1) when Briceno ran away. Establishing probable cause does not mean the crime for which probable cause is established is serious, as the two issues "require quite different inquiries." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). The "commission of a misdemeanor offense," though "not to be taken lightly," "militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and 'posed no threat to the safety of the officers or others.'" *Bryan v. MacPherson*, 630 F.3d 805, 828–29 (9th Cir. 2010) (citation omitted). We hold that Briceno's running from Officer Williams, even if a misdemeanor under California Penal Code section 148(a)(1), was not a serious crime.[2]

---

[2] We note that, on the facts most favorable to Briceno, it is questionable whether this offense was "at issue." Officer Williams stated at some points that, in their original encounter, Briceno was not detained and was free to leave. If that is so, it is unclear how running, rather than walking, away could constitute the crime of

5

Second, it was not "objectively reasonable under the circumstances" for Williams to believe Briceno "posed an immediate threat to [his] safety." *Hayes v. County of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013). Because reasonableness "must be judged from the perspective of a reasonable officer on the scene," *Graham*, 490 U.S. at 396, we "cannot consider evidence of which the officers were unaware," *Glenn*, 673 F.3d at 873 n.8. Officer Williams did not know Briceno had a small keychain knife in his pocket. More importantly, the district court found a factual dispute over Williams's "purported concern" that Briceno was "reaching for a weapon," because neither Williams nor any other officer ever searched Briceno for weapons and Briceno testified that he was only trying to protect his arms. We interpret those facts favorably to Briceno and conclude that a reasonable officer would not have perceived Briceno to be reaching for a weapon.

Williams also asserts he told Briceno to stop resisting while punching him in the head.[3] But this account fails to illuminate whether Briceno was resisting such that a reasonable officer would have believed that, after Briceno was tackled but

---

delaying, obstructing, or resisting a law enforcement officer. Flight from a police officer in a "high crime area" can, under some circumstances, give rise to reasonable suspicion that some *other* crime has been committed. *See Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000); *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019). But we are aware of no precedent that flight under those circumstances is *itself* a crime when, as here, the officer has testified that the suspect was free to leave.

[3] We assume, as we must given Briceno's testimony, that Williams gave no commands *before* striking Briceno in the head.

*before* he was punched, he posed a threat. *See Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

Third, taking the facts in Briceno's favor, Briceno was not resisting or evading arrest when Williams tackled and immediately punched Briceno in the head. Officer Williams's argument, stripped of impermissible disputed facts, relies only on the facts that Briceno ignored Williams's command to "stop" while running and that Briceno's hands were beneath his body when he fell after Williams tackled him. On Briceno's account, he was not directed to withdraw his hands from beneath him before he was punched. Leaving one's hands where they are until directed to do otherwise, especially when done to protect oneself from further injury, does not constitute active resistance to arrest. *See Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). An officer's "unannounced preferences are not substitutes for police orders," and a suspect cannot be "expected to comply with instructions that were never given to him." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001)).

The *Graham* factors reveal Williams's use of force was not justified.

**3.** At the time of this incident, it was clearly established that repeatedly punching a facedown suspect who is not then resisting arrest is unlawful.

*Blankenhorn v. City of Orange* held that a police officer was not entitled to qualified immunity when, after tackling a suspect to the ground, he repeatedly punched the suspect in the head even though the suspect, who had refused to be handcuffed before the takedown, was no longer resisting. 485 F.3d 463, 480–81 (9th Cir. 2007).

Here, Briceno never resisted being handcuffed. On his account: He did not "maneuver" and then pin his hands beneath his body in "attempt to prevent the officer[] from handcuffing him," *see id.* at 478, 480, although he did try to protect his stitched, bandaged hand from further injury *as* he fell. He was never told to make his hands available for cuffing. And as soon as Briceno was "slammed" face-down on the ground, Williams immediately struck him in the head and kneed him in the ribs.

On this account, *Blankenhorn* gave Officer Williams "fair notice" that his "conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). We have interpreted *Blankenhorn* as so holding before, and we reiterate that interpretation here. *See Myers v. City of Hermosa Beach*, 299 F. App'x 744, 746 (9th Cir. 2008); *Orr v. Brame*, 727 F. App'x 265, 267 (9th Cir. 2018).

We AFFIRM the district court's denial of summary judgment.

21-55624, *Briceno v. Williams*

TALLMAN, Circuit Judge, dissenting:

I write separately to express my increasing concern that our Circuit's caselaw micromanages the police in ways that do not appreciate the dangers officers face in the field and fails to grant qualified immunity when officers are placed at great risk "in circumstances that are tense, uncertain, and rapidly evolving"—in contravention of the Supreme Court's repeated admonishments. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Saucier v. Katz*, 533 U.S. 194, 209 (2001) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (citation omitted)).

This is particularly so when a lone officer is attempting to effect the arrest of a non-cooperating suspect. Ironically, the only person to have suffered any serious injury here during the foot pursuit was not the plaintiff; it was the officer. Although "we may not consider questions of evidentiary sufficiency, i.e., which facts a party may, or may not, be able to prove at trial," *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (quotation omitted), I would conclude that, adopting Briceno's version of the facts, "no reasonable jury could conclude" that Officer Williams employed excessive force here, *Scott v. Harris*, 550 U.S. 372, 386 (2007).

As the majority acknowledges, whether the use of force is objectively reasonable or is so excessive as to amount to a constitutional violation requires the

1

Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham*, 490 U.S. at 396 (quotation and citation omitted). My colleagues recognize that this inquiry turns on the facts and circumstances of each case, and the non-exhaustive factors to be considered—which include the severity of the crime at issue and "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). But they do not correctly apply the test with the healthy respect the Supreme Court says is due by judges when officers encounter active resistance in the field.

Application of these factors demonstrates the objective reasonableness of Officer Williams' use of force as a matter of law. While the majority makes much of the fact that the crimes at issue constituted only misdemeanors, that does not end the inquiry. If it did, this area of the law would be far simpler. Officer Williams, a member of a uniformed, proactive anti-crime team tasked with patrolling high crime areas of San Diego in search of crimes in progress, was investigating a situation that any police officer would understand presented reasonable suspicion that criminal activity was afoot. Before Officer Williams could conduct even a cursory

2

assessment of what might be transpiring, Briceno fled the scene, disregarding Officer Williams' commands to stop and frustrating his inquiries. *See Illinois v. Wardlow*, 528 U.S. 119, 123–25 (2000). In response to Briceno's flight, Officer Williams pursued him alone in the dark through the high-crime neighborhood—injuring himself in the process when he fell chasing Briceno and losing the battery to his portable radio, leaving him without backup in a dark setting where no one else knew where he was—to regain control of the situation despite Briceno's active resistance. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001).

Once Officer Williams was able to bring Briceno to the ground by tackling him, he had not yet gained control over the situation; Briceno still had his hand underneath him and near his waistband, and Officer Williams knew from prior experience and training that "suspects have pulled guns and knives from their waistband." It is irrelevant that Officer Williams did not know Briceno was indeed carrying a small knife. Nor is it relevant that *other* officers *subsequently* failed to search Briceno after Officer Williams transferred Briceno to their custody. "[A] particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

3

The Supreme Court has frequently reminded us that officer safety is paramount in these stop-and-frisk situations. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Adams v. Williams*, 407 U.S. 143, 148 (1972); *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12 (1977); *United States v. Hensley*, 469 U.S. 221, 228–29 (1985). Given Briceno's flight late at night in a high-crime neighborhood and that his hand was located near his waistband where weapons are often kept, it was undeniably reasonable for an officer in Officer Williams' position to fear that Briceno might be armed. Reasonably fearing that Briceno could reach for a weapon in an area he could not see, endangering Officer Williams and any others in the area, Officer Williams used the minimal force of distraction strikes with his hand in order to stop the resistance, restrain Briceno in handcuffs, and secure the scene. *Cf. Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022) (holding that until the arrestee was "subdued and restrained, the force used by officers . . . was reasonable").

What else was the officer supposed to do? He did not employ pepper spray, a baton, a taser, or even draw his weapon. To deny qualified immunity in a case like this asks a lone Officer Williams to leave himself vulnerable to attack by an unsecured suspect with a potential weapon. Indeed, it is well-established in use of force cases that "the most important single element of the three specified factors [is] whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Clearly, Briceno still did when

4

the distraction strikes were delivered. For these reasons, no reasonable jury could conclude that Officer Williams employed excessive force in violation of the Fourth Amendment.

Nor in September of 2013 would clearly established law have led a reasonable officer to conclude that he could not use the minimal force of distraction strikes in order to gain compliance over a struggling suspect's hands. The operative case, *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), is distinguishable for at least three reasons. First, unlike the situation posed by *Blankenhorn*—which occurred in a busy shopping mall area, and there were three officers and one security guard present to assist in subduing the suspect, *id.* at 469—this was a tense, rapidly evolving situation, *Graham*, 490 U.S. at 396–97, taking place with Officer Williams all by himself in a dark, high-crime area after he had himself been injured in a foot pursuit. Second, *Blankenhorn* addressed a dispute as to the arrestee's placement of his hands to resist arrest. *See* 485 F.3d at 470. In contrast, here, it was undisputed that Briceno's right hand was still underneath his body, near his waistband, and Officer Williams had experienced "several prior instances where suspects have pulled guns and knives from their waistband." Third, the arresting officers in *Blankenhorn* did not indicate a concern that Blankenhorn was armed, but rather that the suspect was resisting arrest, while an objective officer in the position of Officer Williams would be rightly concerned that Briceno could access a weapon with his

5

hand beneath his body. The United States Supreme Court has recognized that concern as paramount, and so should we.

We should declare that no reasonable jury could find that Officer Williams violated the Fourth Amendment by employing distraction strikes to restrain Briceno in response to his active resistance of arrest here. We are bound to faithfully apply the doctrine of qualified immunity unless and until it is overruled or articulated differently. *Cf. Baxter v. Bracey*, 140 S. Ct. 1862 (2020) (Thomas, J., dissenting from denial of certiorari) (dissenting from denial of petition requesting the Supreme Court to revisit the doctrine of qualified immunity).

Gilbert and Sullivan were right: "A policeman's lot is not a happy one." "The Pirates of Penzance," Act II. I respectfully dissent from the majority's erroneous analysis which jeopardizes the safety of officers like Williams in a dangerous situation like this.