# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2433

_____

J.T.H.; H.D.H.

*Plaintiffs - Appellees*

v.

Missouri Department of Social Services Children's Division

*Defendant*

Spring Cook

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 13, 2022
Filed: July 1, 2022

_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Two parents sued a child-welfare investigator for allegedly retaliating against them for exercising their First Amendment rights. The magistrate judge, acting by

consent of the parties, concluded that neither absolute nor qualified immunity applied. We reverse.

## I.

A sheriff's deputy sexually abused J.T.H.'s 15-year-old son. J.T.H., who also worked in law enforcement, threatened to sue for the abuse. Before long, Spring Cook, a child-welfare investigator, showed up at his door after someone had apparently called the child-abuse hotline and accused him (and his wife) of neglect. The parents asked for the case to be reassigned to an investigator from another county, but Cook kept it for herself.

From there, the investigation took several twists and turns. After conducting several home visits, Cook allegedly told J.T.H. that she would "get[]" his peace-officer's license, which led the family to "refuse[] further home visits." Not long after, Cook issued a preliminary written finding of neglect. *See* Mo. Rev. Stat. § 210.152.2(1). She relied on two incidents of sexual abuse: the one involving the sheriff's deputy and another involving a martial-arts instructor. Cook additionally noted that the parents had permitted their son to go on a date in another state with a teenage boy. If the finding had become final, the parents would have been placed on Missouri's Child Abuse and Neglect Registry. *See* Mo. Rev. Stat. § 210.109.3(1), 210.110(3).

Unsatisfied with the outcome, the parents requested a formal administrative review. *See* Mo. Rev. Stat. § 210.152.4 (providing that "[a]ny person named in an investigation as a perpetrator . . . may seek an administrative review by the child abuse and neglect review board"). At the first step, the circuit manager decides whether to uphold the preliminary finding. *See* Mo. Code Regs. Ann. tit. 13, § 35-31.025(2)(B) (2008). As it happens, Cook was the circuit manager, so she reviewed and upheld her own finding. The second step required Cook, the parents, and their attorney to appear before Missouri's Child Abuse and Neglect Review Board. *Id.* § 35-31.025(2)(C). Following that meeting, the Board concluded that Cook's findings of "neglect were unsubstantiated."

After clearing their name, the parents sued Cook on a First Amendment retaliation theory. *See* 42 U.S.C. § 1983. According to them, the investigation and its aftermath were a direct response to their earlier threat to sue. Cook filed a motion to dismiss on both absolute- and qualified-immunity grounds, but the magistrate judge concluded that neither was available.

II.

Questions about absolute and qualified immunity at the motion-to-dismiss stage are reviewed de novo. *See Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 742 (8th Cir. 2019). Our review "is limited to the facts alleged in the . . . [c]omplaint, which we accept as true and view most favorably to the plaintiffs." *Stanley v. Finnegan*, 899 F.3d 623, 625 (8th Cir. 2018); *see also Sandknop*, 932 F.3d at 742.

Absolute immunity, the "strong[er] medicine," is available only in limited circumstances. *Forrester v. White*, 484 U.S. 219, 230 (1988) (quotation marks omitted). It covers "judicial or adjudicative" acts, *id.* at 229; legislative acts coming within the Speech and Debate Clause, *see id.* at 224; and, as relevant here, prosecutorial acts, *see Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). If absolute immunity existed for a particular government function in 1871, when Congress passed 42 U.S.C. § 1983, then it still does today. *See Forrester*, 484 U.S. at 225–26; *see also Imbler*, 424 U.S. at 417–18. As its name suggests, absolute immunity applies absolutely and without qualification.

Qualified immunity is different. On the one hand, it covers a vast array of actions, from split-second judgment calls to carefully crafted decisions. *See Goffin v. Ashcraft*, 977 F.3d 687, 691 (8th Cir. 2020); *Turning Point USA at Ark. State Univ. v. Rhodes*, 973 F.3d 868, 873–74, 881 (8th Cir. 2020). In other ways, it is narrower: government actors only benefit from it if their actions did not violate a clearly established right. *See McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020). As the Supreme Court has put it, "the right's contours [must have been] sufficiently definite that any reasonable official in the defendant's shoes would have understood

that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)).

A.

Differentiating between the two can be tricky. Determining which applies depends on "'the nature of the function performed, not the identity of the actor who performed it.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Applying the "functional approach," our starting point is the investigation itself, which involved interviewing witnesses and collecting evidence. *See Forrester*, 484 U.S. at 224 (noting that "[r]unning through our cases, with fair consistency, is a functional approach to immunity questions" (internal quotation marks omitted)). Purely investigative activities, even those conducted by a social worker, "do not qualify for absolute immunity." *Schenk*, 461 F.3d at 1046; *see also Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908–09 (9th Cir. 2008) (en banc) (per curiam) ("[S]ocial workers conducting investigations have no [absolute] immunity."); *Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989) (holding that a social worker's "decision to 'open a case' was not entitled to absolute immunity" because the "decision was only investigatory or administrative in nature").

Nor does filing an "investigation report," the final step in Cook's investigation. *See* Mo. Rev. Stat. § 210.152.1, 2(1). Like a probation officer who files a violation report, Cook's task was to make a preliminary "finding" on the issue in front of her. Mo. Code Regs. Ann. tit. 13, § 35-31.025(2) (2008); *see Ray v. Pickett*, 734 F.2d 370, 373–75 (8th Cir. 1984); *Nelson v. Balazic*, 802 F.2d 1077, 1079 (8th Cir. 1986). To be sure, the setting was different: a child-welfare investigation rather than a criminal one. And the standard was different: a preponderance of the evidence instead of probable cause. But the "function" was more or less the same, meaning that neither is a "prosecutorial" act subject to absolute immunity. *See Ray*, 734 F.2d at 373–75 (holding that there is no absolute

-4-

immunity for filing a probation violation report); *see also Millspaugh v. Cnty. Dep't of Pub. Welfare of Wabash Cnty.*, 937 F.2d 1172 (7th Cir. 1991) (explaining that a social worker's application for a child-custody order "was much like a police officer's affidavit seeking a search warrant, . . . which . . . falls outside the scope of absolute immunity"); *Austin v. Borel*, 830 F.2d 1356, 1362 (5th Cir. 1987) (concluding that the same act was "functionally comparable to a police officer seeking an arrest warrant").

B.

Qualified immunity is another story. It is available if the parents' complaint did not state "a plausible claim for violation of a constitutional or statutory right" or the "right was [not] clearly established at the time of the alleged infraction." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

Here, the complaint falls short of establishing that Cook violated a clearly established right. *See id.* Even assuming that the facts in the complaint are true and drawing all reasonable inferences in the parents' favor, "existing precedent" does not "place[] . . . the constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (citation omitted). After all, we have never recognized a retaliatory-investigation claim of this kind. Nor have other courts around the country, which have either rejected the possibility outright or concluded, like we do today, that the law is still in flux.[1] It is safe to say, in other words, that the law is anything but clear.

---

[1]*See Villarreal v. City of Laredo, Tex.*, 17 F.4th 532, 542 n.1 (5th Cir. 2021) (holding that "this circuit does not recognize" a retaliatory-investigation claim); *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018) ("The Supreme Court has declined to consider whether a retaliatory criminal investigation entails a constitutional violation. Other circuits disagree with one another on the issue." (citation omitted)); *Archer v. Chisholm*, 870 F.3d 603, 620 (7th Cir. 2017) ("There is no clearly established rule of law under which an official pursuing a lawful investigation, based on probable cause, has been found liable under the First Amendment to a target."); *Rehberg v. Paulk*, 611 F.3d 828, 850–51 (11th Cir. 2010) (noting that "[t]he Supreme Court has never defined retaliatory investigation,

It makes no difference that, "as a *general* matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of . . . constitutionally protected speech." *Solomon v. Petray*, 795 F.3d 777, 787–88 (8th Cir. 2015) (quotation marks and brackets omitted) (emphasis added). The Supreme Court has instructed us "not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152 (quotation marks omitted). So even if there is a *general* right to be free of retaliation, the law is not clearly established enough to cover the "*specific* context of the case": retaliatory *investigation*. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (emphasis added). Cook is entitled to qualified immunity for both investigative acts.

C.

By the time she reviewed her own finding as circuit manager, however, there was no longer an open investigation. To the contrary, her job at that point was to review the report and either "uphold or reverse" it. Mo. Code Regs. Ann. tit. 13, § 35-31.025(2)(B) (2008). Unsurprisingly, she stood by her own work.

We have already held that absolute immunity is available for functions like this one. *See Stanley v. Hutchinson*, 12 F.4th 834 (8th Cir. 2021). In *Stanley*, two parents sued after a child-welfare investigator made a "'find[-]true' determination," which had the effect of upholding the initial allegations of child abuse. *Id.* at 844. We concluded, as relevant here, that "[t]he true findings may have initiated the administrative hearings regarding child abuse, but this was a prosecutorial decision meriting absolute immunity." *Id.*; *see also Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) ("[S]ocial workers enjoy absolute immunity when acting in their capacities as legal advocates," which includes "initiating court proceedings" and "filing child-abuse complaints.").

---

standing alone, as a constitutional tort, and neither has this Court," and holding that the "right to be free from a retaliatory investigation is not clearly established" (citation omitted)).

Little separates Cook's decision to uphold her own preliminary finding from the find-true determination in *Stanley*. Elsewhere in their brief, the parents point out that *Stanley* did not involve a First Amendment claim. But as we have explained, the availability of absolute immunity depends on "the nature of the function performed," not the type of claim brought. *Forrester*, 484 U.S. at 229.

## III.

We accordingly reverse the judgment and remand for dismissal of the parents' First Amendment retaliation claim.

_____